## GARRETT V. BICKLIN, WINZER & CO.

1. **Appeal:** STRIKING OUT BILL OF EXCEPTIONS. Appellant's abstract contains no bill of exceptions, and appellees filed an additional abstract, in which a bill of exceptions is set forth. Since this bill of exceptions does not change the legal import of the record, a motion to strike it out is overruled. The reasons shown in the bill for the court's rulings are not considered on the appeal.

2. **Change of Venue:** PREJUDICE OF JUDGE: NO COUNTER-SHOWING: DUTY OF JUDGE: EXTENT OF DISCRETION. Under chapter 94, Laws of 1884, an application for a change of venue on the ground of the prejudice of the judge is addressed to the discretion of the judge, and, though no counter-affidavits are filed, nor the affiants examined in court, he is not, as a matter of course, to grant the change, but, being "fully advised," he must decide "according to the very right and merits of the matter." And, though the affidavit of the applicant charges him, upon information and belief, with such misconduct in regard to the case as would clearly disqualify him to sit in judgment upon it, and, though others swear that they believe certain alleged disqualifying facts to be true, yet he is to decide according to the merits of the case, and, if he knows the alleged facts to be untrue, he is warranted in taking into the account his own knowledge and convictions, and, being thus "fully advised," he must render his decision.

3. ———: ———: WRONG DECISION IN LIKE CASE. The fact that a judge has made an erroneous decision in a like case is of no value as showing prejudice of the judge, in an application for a change of venue.

4. **Statute of Limitations:** DOES NOT CEASE TO RUN AGAINST ONE REMEDY WHILE ANOTHER IS BEING PURSUED. Where a party has a choice of remedies, and makes his election, the statute of limitations does not, while he is pursuing the chosen remedy, cease to run against the other one. Accordingly, where there was judgment against an intervenor claiming the property in an attachment case, and, upon his appeal, the judgment was reversed, and, upon a new trial, there was a judgment in his favor, which, on appeal, was affirmed, but meantime the attached property was sold, and the proceeds paid to the attachment plaintiffs, *held* that an action accrued to the intervenor as against such plaintiffs to recover the value of the property, at furthest, when it was sold and the proceeds paid over, and that the action was barred in five years after that date, notwithstanding the other action was pending. In this case the intervenor knew of the sale prior to the second trial of his intervention, but, instead of conforming his pleadings to the facts, he continued his action for the recovery of the property, while the statute was running against his right of action to recover its value. (See opinion for cases distinguished.

| 78 | 115 |
| 89 | 272 |
| 78 | 115 |
| 109 | 46 |
| 78 | 115 |
| 111 | 390 |
| 78 | 115 |
| e115 | 215 |
| 78 | 115 |
| 117 | 728 |

*Appeal from Des Moines District Court.*—Hon
CHARLES H. PHELPS, Judge.

FILED, JUNE 4, 1889.

ACTION for damages for the wrongful seizure of
property on attachment. A demurrer to the petition
was sustained and judgment entered for defendants.
The plaintiff appeals.

*Newman & Blake* and *E. W. Tatlock*, for appellant.

*S. L. Glasgow*, for appellees.

GRANGER, J.—I. Appellant's abstract presents two
assignments of error; either of which, if sustained,
would reverse the judgment: (1) The action of the
court in refusing a change of venue; (2) the sustaining
of the demurrer to the petition.

Appellant's abstract contains no bill of exceptions,
and appellees present an additional abstract, in which a
bill of exceptions is set forth; and we first
notice a motion to strike from the additional
abstract this bill of exceptions. We think
there are no reasons for striking the bill of exceptions
from the record; but, as a discussion of the ques-
tions presented, and a review of the affidavits filed in
support of the motion, would add much to the extent of
this opinion, we will say that the bill of exceptions in
no manner changes the legal import of the record, as
presented in appellant's abstract, if we except there-
from the reasons given by the court for its ruling on the
motion, and, in our consideration of the case, these
reasons will be entirely disregarded.

1. APPEAL: strik-
ing out bill of
exceptions.

II. The motion and affidavits to change the venue of
the cause for trial were directed to the alleged prejudice
of the judge, and, to a proper understanding
of the ruling, it will be necessary to set
forth the affidavits. They are as follows:
"I, A. Garrett, on my oath, say that I am
the plaintiff in the foregoing action, and
that, as I verily believe, I cannot obtain a fair trial

2. CHANGE of
venue: preju-
dice of judge:
no counter-
showing: duty
of judge:
extent of
discretion.

before Hon. CHAS. H. PHELPS, on account of his preju-
dice against me and my cause of action; that he has
tried the same case in substance and decided the same
against me, which decision was reversed; that I am
informed and believe the said CHAS. H. PHELPS, on more
than one occasion, has said in Wapello, Iowa, that the
transaction between Mr. Kendall and myself was a
damned fraud, and that I never ought to recover in the
action; that since the case was last decided in the
supreme court the said CHAS. H. PHELPS has said pub-
licly, and more than once, that my cause of action was
barred by the statute of limitations, and that I never
ought to recover. I further say that all of said defend-
ants are residents of Des Moines county, Iowa, and that
I was forced, under the law, to bring my action in the
said county of Des Moines. Affiant further says that
he did not know fully of the cause on which this appli-
cation is based until within the past few days. A.
GARRETT." The following affidavit was subscribed by
twenty persons, residents of Louisa county: "Each of
the undersigned, for himself, says that he is a resident
of Louisa county, Iowa; that he is not related to the
said A. Garrett in any degree whatever; that he is not
in the employ of the said A. Garrett, nor is he
agent or servant of said Garrett; and he says that the
Hon. CHAS. H. PHELPS is so prejudiced against the said
A. Garrett that he cannot have a fair and impartial trial
before the said CHAS. H. PHELPS of his cause, as he verily
believes." No counter-affidavits were filed, nor were
any of the affiants called into court for cross-examination,
and it is first urged that, upon such a showing, the
court had no discretion, and that the change should have
been granted as a matter of right. The present statute
on the subject is as follows: "A change of the
place of trial in any civil action may be had in any of
the following cases: * * * (3) Where either party
files an affidavit, verified by himself and three disinter-
ested persons, * * * stating that * * * the
judge is so prejudiced against him * * * that he
cannot obtain a fair trial." But, when either party files

an affidavit, as provided by this subdivision, the other party shall have a reasonable time to file counter-affidavits; and the court or judge, in its exercise of a sound discretion, must decide whether a change shall be granted, when fully advised, according to the very right and merits of the matter. The court may, in its discretion, cause the affiants upon either side to be brought into court for examination upon matters contained in their said affidavits." Code, sec. 2590, as amended.

The argument of counsel proceeds upon the theory that as no counter-affidavits were filed, and the affiants were not brought into court for examination, there arose no controversy, and there was nothing for the court to decide.

Prior to 1884 there was no provision for counter-affidavits in such cases, and the court had no discretion. If the affidavits were filed in form, the change must be granted. It is a matter of public history in the state that the law, as it then existed, was much abused, and the correction of this evil was one of the reasons inducing the change. The remedy is by investing the court with a discretion, requiring him to be first "fully advised," and then to decide "according to the very right and merits of the matter," and we do not think the exercise of this discretion is any less a duty with the court when there is no counter-showing than when there is. In any case where the change is sought upon evidence, it is its duty to weigh it, and in the exercise of a sound discretion, as expresssed in the law, decide the question. Experience discloses many instances in which a want of merit is manifest upon the face of an *ex parte* showing. The language as to the filing of the counter-affidavits is permissive; but there is nothing in the language to indicate that without the counter-affidavits the former are to be taken as true.

It is next urged that the refusal to grant the change, under the showing made, was an abuse of discretion. This leads to an examination of the evidence. A reference to the affidavit of the plaintiff will show that it goes further than to state a conclusion of prejudice. It

affirms particular acts which, if true, would show preju-
dice within the contemplation of the law, and no judge
who would thus demean himself with reference to a
cause pending in his court should ever sit in judgment
upon it; and, if convinced of the truth of it in this case,
it would here meet its merited rebuke,—if not otherwise,
by a prompt reversal of the judgment. But does the
record disclose the truth of such statements? The alleged
remark as to the fraud seems to have been made in
Wapello, and the affidavit is made in this respect upon
information. As to the sources of such information,
we are not informed; and, without any contradiction,
we regard it as of little value. As to the other facts
charged, it is not clear whether they are stated as upon
information or personal knowledge.

The other affidavit is signed by twenty residents
of Louisa county where the plaintiff resides. It is an
affidavit of their belief of the facts therein stated, and
that statement is a mere conclusion without facts show-
ing upon what it is based. The affidavit in this form is
competent under the statute; but, while competent as
proof, its value as such depends largely upon its recit-
als. Under a statute requiring a court to decide whether
a change shall be granted according to the "very right"
and merits of the matter," what was the duty of the
court in this case? If it knew these statements to be
untrue, must it cast aside its own knowledge and judg-
ment, and grant the change *pro forma*, or should it be
governed by its convictions as to the right? Not
designing by construction to invest the court with an
arbitrary or oppressive power, we think, under the
broad provisions of the statute, the court should act
upon the facts as they appeared, considering its own
knowledge in the premises. Any other holding would
rob the statute of one of the purposes it was designed
to subserve. The refusal of the court to grant the
change we understand to be a denial of the charges of
misconduct as stated in the affidavit; for we must assume
that no court, conceding the truth of such statements,
would entertain a cause for trial. If we were to adopt

Garrett v. Bicklin, Winzer & Co.

the rule that the court must be governed by the weight of the testimony as it appears before it in such cases, without regard to its own convictions or knowledge, a case might arise wherein the court was cognizant of its prejudice, and, with a preponderance of evidence, it must retain a cause for trial. Such a condition of affairs the law does not contemplate. The usual inclinations of the courts, under a showing of prejudice, is to grant the change; and we think that would have been the result in this case, but for the statements of misconduct on the part of the judge, when to grant the change might be construed as a practical concession that the statements were true.

The affidavit of plaintiff discloses that a cause substantially like the one at bar was tried before the judge, and a judgment entered against the plaintiff, and on appeal to this court it was reversed, and on retrial before another judge a a favorable judgment was entered, and on appeal it was affirmed, and this is urged, with other facts, as indicating prejudice. To this claim we attach very little importance. The second trial was had in the light of a final adjudication of the disputed questions. Reversals are too frequent from courts of unbiased judgments and unquestioned learning to justify their use as a basis for an assignment of prejudice or ill will. We might more readily adopt appellant's theory in this respect if better satisfied that the controlling force of decisions between the courts was less a matter of position than of merit.

*3. —: —: wrong decision in like case.*

III. We now notice the questions presented by the demurrer to the petition. The facts necessary to an understanding of the rulings are as follows: October 17, 1881, the defendants herein (Bicklin, Winzer & Co.) brought suit against R. S. Kendall, and aided the same by an attachment which was levied on certain property as the property of Kendall. The plaintiff herein (Garrett) intervened in that suit, claiming to be the owner of the property attached. The issues

*4. Statute of limitations: does not cease to run against one remedy while another is being pursued.*

tendered upon the intervention petition were decided against the intervenor, and in favor of plaintiffs (defendants herein), February 15, 1882. On appeal to this court the judgment was reversed. On retrial in the district court there was a judgment for intervenor, and the same was, on appeal to this court, affirmed, September 23, 1885. As against the defendant Kendall, judgment was taken in February, 1882, and in April thereafter the property taken by virtue of the attachment, finally adjudged to be the property of the intervenor (plaintiff herein), was sold on special execution, and the proceeds paid to Bicklin, Winzer & Co. The demurrer presents the question of the action being barred by the statute of limitations. In such a case the cause of action is barred in five years after the cause of action arose, and the point of contention by counsel is, when did the cause of action arise? So far as disclosed by the abstract, this action was commenced November 25, 1881. Appellant's theory is that the cause of action arose at the date of the final judgment in the former proceeding, April 21, 1886; while that of appellees is that it arose when the property was first taken on the attachment, in March, 1882, or, at furthest, when it was sold and converted by virtue of the special execution in April thereafter. To the query, could the plaintiff in 1882, when the property was wrongfully taken, or when it was wrongfully sold and converted, with no other suit pending, have commenced this proceeding to recover its value? there can be but one answer, and that in the affirmative. The answer should be decisive of the question presented by the demurrer, unless there is something in the fact of the intervention proceeding to defeat that right. It must be conceded that after the seizure of the property, and before the filing of the intervention petition, Garrett had his choice of remedies, as between the intervention proceeding to secure the property, and an independent one to recover its value. We do not understand that where a party has a choice of remedies, and makes his election, the statute ceases to run as to the other remedy.

We think that a right of action arose in this case, at furthest, when the property was sold and the proceeds paid to the defendants herein.   This was after the first judgment had been reversed in this court, and the cause was pending in the district court as between the parties to this suit, and the facts of the sale of the property must have been known to this plaintiff.   He then had a full and fair opportunity to so adjust the pending proceeding as to accomplish therein just what he proposed to accomplish in this suit, i. e., conform his pleading to a demand for the value of the property, which he knew to be beyond the reach of these defendants, and conclude the litigation in that one proceeding.   We are referred to no authorities, and we see no reason for holding that the statute will cease to run to enable a party to first determine his ownership of property, and then, by another proceeding, recover its value, when pending the first proceeding it is apparent that an action for value is the only available one, and open to his choice therein.

As touching the question of when a cause of action arises, we are referred to the case *Steel v. Bryant*, 49 Iowa, 116.   It was an action against a clerk for taking an insufficient stay bond on a judgment.   It was held that the cause of action did not accrue as against the clerk until the expiration of the stay bond,—one year, —and the holding could not well be questioned, as the bond stayed the judgment for that time, and damage could only arise upon non-payment.   If payment was made, no injury could result from the taking of the insufficient bond.   The same rule and reasoning apply to *Moore v. McKinley*, 60 Iowa, 367.   In *Goodnow v. Stryker*, 62 Iowa, 221, and other like cases therein referred to, a very different question arises.   In those cases the title to lands was in dispute, and was settled by litigation.   A party who supposed he owned the land paid the taxes.   The title being adjudged in another, it was held that he could recover the taxes paid, and that his right of action therefor depended upon a contingency, i. e., who was the owner; and that

the statute did not commence to run till that was known. In this case, after April, 1882, there was in fact but a single question,—who should have the value of the property taken? A single suit would in all reason decide such a question. There was no contingency to arrest the operation of the statute.

We think the holding of the district court was right, and its judgment is                          AFFIRMED.