ALVERSON & HAMILTON v. THE ANCHOR MUTUAL FIRE
INSURANCE COMPANY, Appellant.

**Appeal:** CHANGE OF VENUE: *review.* Refusal of an application for a change of place of trial, on which the affidavits were in conflict, on the ground of the prejudice of the people of the county against the defendant, as shown by comments in newspapers, will not be disturbed on appeal where it appears that such comments were designed for political effect rather than otherwise, and that there was no abuse of discretion.

REVIEW: *evidence.* No question for the consideration of which the evidence is necessary can be considered on appeal where the evidence has not been so preserved that it is part of the record.

*Rule applied.* In an action on a policy of insurance covering notions, groceries and hardware, and providing against keeping of gunpowder, petroleum, coal oil and celluloid. the issues were as to the right of the insured to keep such prohibited articles for sale in certain small quantities, as he did. An instruction was given that if those prohibited articles were generally included and carried by dealers of groceries, hardware and notions, the policy would not be void. This instruction, and the admission of evidence on that issue, were assigned as error, but no part of the evidence was in the record. *Held* that, under such condition of the record, these questions could not be considered.

*Offers and rulings.* Statements in the abstracts on appeal, in the nature of conclusions as to what took place on the trial as to offers and rulings on evidence will not be considered where the record is entirely silent in regard thereto.

*Appeal from Davis District Court.*—HON. F. W. EICHELBERGER, Judge.

THURSDAY, APRIL 7, 1898.

ACTION on a policy of fire insurance. Judgment for plaintiff, and defendant appealed.—*Affirmed.*

*S. S. Carruthers* and *Sullivan & Sullivan* for appellant.

*Payne & Sowers* and *Traverse & Taylor* for appellee.

GRANGER, J.—I. The trial of this cause commenced April 9, 1896. During the vacation preceding, the defendant presented an application for a change of place of trial because of the prejudice of the people of Davis county, which application was supported by affidavit. From a showing for the change of place of trial, it is made to appear that the persons constituting the plaintiff firm, Alverson & Hamilton, had been jointly

indicted on a charge of having burned the building and the stock of goods, or a part thereof; that a defense in this case is that at least a part of the property was destroyed by fire by the wilful and fraudulent acts of the plaintiff; that Alverson was tried on the indictment in Davis county, which trial occupied some ten days of time, in which some one hundred and forty witnesses were examined, about one hundred and twenty of whom resided in Davis county; that the cost of the trial was about four thousand dollars; that the trial attracted quite a general public interest in the county, many people being in attendance; that the newspapers of the county made comments as to the trial, and the cost of it. There was a verdict of not guilty, and certain exhibits to the application are copies of articles published after the trial, in which the facts and proceedings are somewhat detailed, with a statement that the county attorney was being censured for having pushed the case for trial at the time he did, and on the evidence he presented. In one paper stress was placed on the matter of costs to the county, that might have been avoided had the case not been pressed for trial before the civil suits to recover on the policies of insurance, in which the same question would be presented. The other paper took a contrary view of the matter, claiming that the statements as to costs and the conduct of the county attorney were untrue; that the record showed the costs to be somewhere near one thousand, two hundred and fifty dollars, and justified the acts of the county attorney. It appears that these papers had a circulation of about eight hundred copies each in the county, and that they were distributed from every post office therein. Besides these exhibits are affidavits in support of the application, to the effect that the defendants could not have a fair trial in Davis county, because of the prejudice of the inhabitants. These affidavits

recite what the affiants have seen and heard, and the conclusion that such a prejudice exists. Of these there are seven or eight. A counter showing makes it appear that the population of the county is in excess of fifteen thousand, and that there are two thousand, three hundred and sixty-four persons in the county subject to duty as jurors. It also appears from the affidavits of some thirty or more persons residing in different parts of the county, who are entirely disinterested, that there is no prejudice existing in the county against the defendant. This conclusion is based on the facts stated, that they had not heard any of the inhabitants of the county talk about the case, and they did not know themselves that there was such a case pending in Davis county until they were asked to sign the affidavits. We do not overlook the fact that these affidavits are limited in scope to knowledge or talk of this partcular case; and of course there might be prejudice against the company because of the criminal suit, even though there was no knowledge of the civil suit. But reliance is largely placed on the papers creating prejudice in the remote parts of the county. The articles in the *Bloomfield Democrat* are the ones that must have created the prejudice, if it existed. The articles in that paper make especial reference to the civil suit pending, and make it a prominent feature touching the costs to the county thought to have been unnecessarily made. These affidavits are quite conclusive proof that the papers had not reached the inhabitants of the county, so as to create a general prejudice; for they could not have been read generally, and so many persons, from so many localities, have been ignorant of so prominent a fact in the publications. It is further to be said that the contrary expressions and conclusions of the two papers would go far to allay, rather than to create, prejudice. The two papers seem to have general circulation, and a reader of the articles would quite readily

conclude that they were designed more for political than for other effect. It is not practicable to represent the record fully, for there are many detail facts favorable to both sides. It is, however, to be said that the question of prejudice is clearly one of fact for the court below. We think the showing preponderates against a conclusion of prejudice, but, were it otherwise, we could not interfere, in the absence of abuse of discretion. It should be stated that the hearing on this question was before Hon. Robert Sloan, who did not preside at the trial.

II. The policy covered, among other things, notions, groceries, hardware, and all other goods, not more hazardous, kept for sale in a retail country store. It contained a provision against keeping numerous articles, and among them, gunpowder, petroleum, coal oil, or celluloid. The issues were so made that the plaintiff attempted to justify the keeping of such articles in the manner they were kept. On this branch of the case the court gave the following instruction: ("13) One of the defenses made in this case is that the policy is void because the plaintiffs had in their stock of goods articles prohibited by the policy; that is, gunpowder, coal oil, and celluloid. The policy prohibits the carrying of said articles in stock without the written consent of the company. The policy, in its written provisions, covers and includes groceries, hardware, and notions. If you find from the evidence that the amount of powder, petroleum, coal oil, or celluloid carried by the plaintiffs was small in quantity, and in such amounts only as are generally and usually carried by country general stores, and also find from the evidence that such articles, so carried, are generally and usually included by the trade, and by wholesale and retail dealers, in the terms, 'groceries,' 'hardware,' or 'notions,' then and in such case

the policy would not be void." It is urged that this instruction is erroneous, and also that the rulings by which evidence was admitted to show that the articles prohibited might be kept were erroneous. No part of the evidence taken on the trial is in the record. Appellant, in its abstract, states that evidence was introduced by both parties on the issue as to the keeping of such articles; that objections were made by the defendants, overruled by the court, and exceptions taken. These statements in the abstract make it appear that plaintiff was permitted to show a general custom of merchants to keep gunpowder in quantities of twenty-five pounds, and to keep coal oil for sale, and that coal oil and petroleum were included in the term "hardware and groceries." These questions cannot be considered under the condition of the record. The statements, in the abstract, of what took place on the trial as to offers and ruling on evidence, must be disregarded, because they are matters as to which the record is entirely silent. If such conclusions would ever be proper in an abstract, they should be made from the record, so as to be justified by it. The evidence used on the trial below has never been preserved of record so that it is a part of the record on appeal, and can in no way be considered, nor can any question for the consideration of which the evidence is necessary. This has been so many times held that we need not refer to authorities. It is true that the intruction refers to evidence in a way to indicate there was evidence on that particular issue, but what it was, or how it came into the case, does not appear, except from the unauthorized statements in the abstract which we cannot consider. It may have been admitted by consent, or without objection. We do not presume against the action of the court below, but in support thereof. The judgment will be AFFIRMED.