JAY J. SMYTH V. PETERS SHOE COMPANY, Appellant.

**Statute of Frauds:** WRONGFUL ATTACHMENT:     *Foreign corporations.*
Code, section 3452, providing, "When a cause of action has been
fully barred by the laws of any country where the defendant
1   has previously resided, such bar shall be the same defense as
though it had arisen under the provisions of this chapter, but
this section shall not apply to causes of action arising within
the state," applies to an action for wrongful attachment made
in another state by a corporation organized under the laws
thereof, and residing therein.

RUNNING OF STATUTE:   *Intervention.*   The statute begins to run
against an action for wrongful attachment from the time of
2   attachment, or at least from the time the property was sold
in the attachment suit; and not from the time of final judg-
ment in said suit against the plaintiff therein, though the
owner intervened therein, and though, after the owner's inter-
vention, he was made a defendant in such suit.

*Appeal from Linn District Court.*—HON. WILLIAM G.
THOMPSON, Judge.

TUESDAY, MAY 15, 1900.

THE petition filed by plaintiff on the twenty-fourth day
of December, 1897, was aided by attachment, and recites
that the Peters-Miller Shoe Company was, in the year 1891,
a mercantile corporation duly organized and existing under
the laws of the state of Missouri; that after the acts com
plained of the Peters Shoe Company was incorporated in
said state, and succeeded to the rights and business and as-
sumed the liabilities of the first-named company.   It is fur-
ther charged that in March, 1891, the Peters-Miller Shoe
Company brought suit by attachment against one Casebeer
in the circuit court of Wayne county, Mo., and in said action
levied upon and caused to be sold a large quantity of mer-
chandise belonging to plaintiff; that plaintiff intervened in
said cause, setting up his title to the property so taken; that

on a trial in the circuit court verdict and judgment were rendered against plaintiff, but on appeal this judgment was reversed, and the case remanded, and on a second trial judgment was entered establishing plaintiff's ownership of said property; that the date of final judgment was November 1, 1896. There was a second count in the petition, but, so far as the questions we have to consider are concerned, it is needless to set it out. It but repeats in a different form the facts already stated, and alleges that the plaintiff in attachment charged that plaintiff here was a partner with Casebeer. The answer puts in issue the material allegations of the petition, and sets up the statute of limitations. On motion of plaintiff, at the close of the testimony the court instructed the jury to find for him in the sum of one thousand four hundred and forty-one dollars. This was done, and from the judgment rendered thereon this appeal is taken.—*Reversed*.

*Preston & Moffit* and *Lubke & Muench* for appellant.

*Jamison & Smyth* for appellee.

WATERMAN, J.—We need consider but one of the several matters discussed, and that is the plea of the statute of limitations. The levy of the attachment was made on March 18, 1891. The sale was had April 24th of the same year, and this action was not begun until December 24, 1897. Under the statutes of the state of Missouri, where the cause of action arose, and where defendant resides, an action of this kind is barred in five years. Section 3452 of our Code provides: "When a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defense as though it had arisen under the provisions of this chapter, but this section shall not apply to causes of action arising within the state." That this section applies to a case such as we have here seems manifest from its terms. This court has

in several instances construed it according to its plain import. *Lloyd v. Perry,* 32 Iowa, 144; *Lebrecht v. Wilcoxen,* 40 Iowa, 93. We are cited by appellee to the case of *Winney v. Manufacturing Co.,* 86 Iowa, 609, as holding that a foreign corporation cannot avail itself of the defense of the statute of limitations of this state. The question at issue there was, under what circumstances a foreign corporation could set up the bar of the Iowa statute. Here it is claiming the bar of its home statute, under which the cause of action arose. *Lebrecht v. Wilcoxen* is in point on the proposition that a defendant does not have to become a resident of this state to enable him to plead the bar of a foreign statute.

II. It is contended further by appellee that his cause of action did not accrue until the final determination of the attachment suit in which he intervened. This was in November, 1896. We think this court has settled the question that the cause of action accrues when the property is taken, or at the latest when it is sold under the writ, in a case of this nature. The fact that plaintiff intervened would not toll the statute. *Garrett v. Bicklin,* 78 Iowa, 115, was an action for damages for the wrongful seizure of plaintiff's property under a writ of attachment against another. Garret intervened in the attachment suit, claiming to be the owner of the property. When he brought suit for damages, the statute of limitations was set up, and on this issue this court said: "Appellant's [plaintiff's] theory is that the cause of action arose at the date of the final judgment in the former proceeding, April 21, 1886; while that of appellees is that it arose when the property was first taken on attachment, in March, 1882, or at furthest when it was sold and converted by virtue of the special execution in April thereafter. To the query, could the plaintiff in 1882, when the property was wrongfully taken, or when it was wrongfully sold and converted, with no other suit pending, have commenced this

proceeding to recover its value? there can be but one answer, and that is in the affirmative. The answer should be decisive of the question presented by the demurrer unless there is something in the fact of the intervention proceeding to defeat that right. It must be conceded that after the seizure of the property, and before the filing of the intervention petition, Garret had his choice of remedies as between the intervention proceeding to secure the property and an independent one to recover its value. We do not understand that, where a party has a choice of remedies, and makes his election, the statute ceases to run as to the other remedy. We think that a right of action arose in this case at furthest when the property was sold, and the proceeds paid to defendant herein. * * * We are referred to no authorities, and we see no reason for holding, that the statute will cease to run to enable a party to first determine his ownership of property, and then, by another proceeding, recover its value, when pending the first proceeding, it is apparent that an action for value is the only available one, and open to his choice therein." See, also, *Valley Bank of Clarinda v. Shenandoah Nat. Bank,* 109 Iowa, 43. It is in evidence that under the statutes of Missouri plaintiff had the same remedies as are given by our Code, and his election was identical with that made by Garrett in the case from which we have quoted.

Something is claimed for the alleged fact that this plaintiff was made a defendant in the original attachment suit. It is thought because of this the statute could not begin to run until final determination of that action. If this fact would alter the rule,—a question we do not determine,—it can have no weight here. The petition makes no such claim. The allegation that plaintiff intervened in the attachment suit is inconsistent with the theory that he was a defendant, for a party to an action cannot intervene in it. The evidence all shows that plaintiff did intervene. The files in the attachment case were not offered in evidence on this trial. The only foundation for the claim that Smyth

was a defendant is in this statement made by him when on the witness stand: "They [the attachment plaintiffs] amended their petition, and made me a party to the suit by claiming that I was a partner of Casebeer's. I think this was before I interpleaded, though I may be mistaken." If it was done after the interplea, it could not affect the matter we have under consideration; and it does not appear but this was the case. It is not denied that in response to the interplea the plaintiffs in attachment, by reply or answer thereto, alleged that Smyth was a partner of Casebeer, and we are inclined to believe in this way only was such a charge made. We conclude, on the whole, that this action was barred, and it was error to render judgment in plaintiff's favor.—REVERSED.