CARROLL E. CASTNER, appellee, v. R. C. WRIGHT, appellant.

No. 51322.

(Reported in 127 N.W.2d 583 and 128 N.W.2d 885)

April 8, 1964.

Supplemental Opinion and
Rehearing Denied June 9, 1964.

James P. McGrane, of Des Moines, and Life, Davis & Life, of Oskaloosa, for appellant.

Heslinga & Heslinga, of Oskaloosa, for appellee.

Garfield, C. J.—Plaintiff Castner brought this law action against defendant Wright for alienating the affections of plaintiff's wife Gelenne. Following trial a jury returned a verdict for plaintiff of $45,000. The trial court ruled this amount was not sustained by sufficient evidence and gave plaintiff the option of remitting all in excess of $12,500 or submitting to a new trial. Plaintiff filed the remittitur. Defendant has appealed from judgment against him for the reduced amount.

I. Defendant's first assigned error is the overruling (by Judge Carson who did not preside at the trial) of his motion for change of place of trial to another county on the ground the inhabitants of Mahaska County were so prejudiced against him he could not obtain a fair trial there. The motion was supported by affidavit of defendant and identical affidavits of 50 residents of Mahaska County, stating many inhabitants of the county are prejudiced against defendant and a fair trial could not be had there.

Plaintiff filed resistance to the motion, supported by 31 counteraffidavits of residents of Mahaska County in three somewhat different forms. Twenty-nine of them state that in affiant's opinion there is no such prejudice in the county that defendant could not receive a fair jury trial there. The other two affidavits express the opinion he could receive a fair jury trial in Mahaska County.

The motion and resistance were submitted solely on the affidavits. No affiant was orally examined as permitted by rule 167(c), Rules of Civil Procedure; nor was other proof offered in support of the motion. The court held the affidavits attached to the motion were insufficient in not stating the affiant was disinterested and not an agent, servant, employee or attorney of defendant, nor related to him within the fourth degree. Such disinterest and lack of relationship are asserted in the motion signed by defendant's counsel but it is not verified. The court also found there was insufficient showing the inhabitants of Mahaska County were so prejudiced against defendant he could not obtain a fair trial there.

The requirement of rule 167(c) as to the contents of affidavits in support of a motion for change of place of trial is substantially the same as that of the statute the rule supersedes— section 11408, subsection 3, Code, 1939. Note 29 Iowa Law Review 108, 109, 110. We construed the statute to require the statements as to disinterest and lack of relationship of each affiant to appear in his affidavit. The Chicago & S. W. R. Co. v. Heard, 44 Iowa 358, 360, 361; Fairburn v. Goldsmith, 58 Iowa 339, 340, 341, 12 N.W. 273. See also Goodnow v. Litchfield, 63 Iowa 275, 19 N.W. 226.

The view taken in these early cases is consistent with the provision of rule 80(b), R. C. P., "Any motion asserting facts as the basis of the order it seeks * * * shall contain affidavit of the person or persons knowing the facts requisite to such relief."

Aside from any question of sufficiency of the affidavits attached to defendant's motion, it does not appear the ruling was wrong. Such a ruling, at least where counteraffidavits are filed, is largely a matter of discretion with the trial court. He is more able to appraise the situation than we are. Abuse of discretion does not appear. Croft v. Chicago, R. I. & P. R. Co., 134 Iowa 411, 414, 415, 109 N.W. 723; Petty v. Hayden Bros., 115 Iowa 212, 215, 88 N.W. 339; Union Mill Co. v. Prenzler, 100 Iowa 540, 542, 69 N.W. 876; Garrett v. Bicklin, Winzer & Co., 78 Iowa 115, 116–120, 42 N.W. 621; State v. Stewart, 74 Iowa 336, 338, 37 N.W. 400. See also Faivre v. Mandercheid, 117 Iowa 724, 727, 728, 90 N.W. 76.

The note, supra, in 29 Iowa Law Review, at page 110, observes: "Where opposing affidavits are filed, the court has been reluctant to overrule the trial judge, as in the case when bad newspaper publicity preceded trial." Citing Alverson v. Anchor Mutual Fire Ins. Co., 105 Iowa 60, 61-64, 74 N.W. 746.

While the cited precedents were decided under the statutes which our Rules of Civil Procedure supersede, we think the rules also contemplate the exercise of the trial court's discretion in such a matter.

II. Before considering other assigned errors it may be well to state the general rules applicable to the case and something of the factual situation.

The three essential elements of such a cause of action are: 1) wrongful conduct of defendant, 2) loss of affection or consortium of plaintiff's spouse, and 3) causal connection between such conduct and loss. Actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of. Rank v. Kuhn, 236 Iowa 854, 857, 20 N.W.2d 72, 74, and citations; Koehler v. Koehler, 248 Iowa 144, 151, 79 N.W.2d 791, 796; Kiger v. Meehan, 253 Iowa 746, 750, 113 N.W.2d 743, 746.

In the absence of evidence to the contrary it is pre-

sumed husband and wife have affection for each other. Glatstein v. Grund, 243 Iowa 541, 545, 51 N.W.2d 162, 166, 36 A. L. R.2d 531, and citations; Kiger v. Meehan, supra. Also, less proof is required to support such an action against a stranger than against a parent of the spouse. Ibid. This is because of the parent's right to advise a married child as to his welfare, including domestic affairs.

III. Plaintiff and his wife were married in 1938. Four children were born to them. The second child died at age three. The oldest is married and lives in California. The two younger ones lived at home. Plaintiff and his wife finally separated October 30, 1961. About September 9, 1961, the wife Gelenne sued for divorce. Reconciliation was attempted, they resumed living together for a time and Gelenne dismissed the divorce action. After the final separation she commenced another such action. We understand it was still pending when the present action, commenced February 28, 1962, was tried in January 1963. Gelenne's attorney was a member of the firm representing defendant in the present action. In December 1961 plaintiff went to southern California but returned to Mahaska County occasionally in 1962.

Plaintiff and his wife lived most of the time in New Sharon but some of the time in Oskaloosa, 12 miles to the south, where defendant also lived. Plaintiff was a contractor and builder and did a good deal of construction work for defendant in the ten years commencing in 1951. From 1958 Gelenne worked at least parttime in Oskaloosa.

There is little doubt Gelenne had lost her affection for plaintiff when they finally separated. Plaintiff claims, supported by substantial evidence, this was caused by defendant's wrongful conduct. Gelenne maintains, and substantial evidence supports her, loss of her affection for plaintiff was caused by the latter's mistreatment of her. Defendant was not a witness. Gelenne obviously favored him rather than her husband.

An attorney, who appeared for defendant before his motion for new trial was filed and also in this court, appeared for Gelenne at the trial although she was not a party to it. When plaintiff's counsel questioned her as his witness the attorney

objected for her to most of the questions on the ground the answers might incriminate her. Most of the objections were sustained. Because of this and defendant's failure to testify, there is no denial of much of the testimony for plaintiff as to defendant's frequent association with Gelenne and wrongful conduct reasonably calculated to alienate her affection for her husband.

IV. Defendant's second assigned error is that he was unduly limited in cross-examining plaintiff, Gelenne and five other witnesses for plaintiff and, it is said, denied the right to cross-examine plaintiff's witness Harold Kelderman.

Except as to plaintiff himself and Kelderman, defendant's assignment of error and argument wholly fail to comply with the requirements of rule 344(a) (4) (First) (Second) and (Third), R. C. P. Nowhere are there "references to the pages and lines of the record, sufficient to show fully the manner in which the error arose and the ruling of the trial court thereon." Counsel's statement that to set out the claimed error "specifically would require reiterating the entire record" is not warranted. Less than two pages of argument are devoted to this claim of error as to all witnesses other than plaintiff and Kelderman. Notwithstanding this lack of compliance with the rule we have, as a matter of grace, considered the assigned error.

As to one of the named witnesses no objection was made to defendant's cross-examination and no limitation was imposed. As to another, only one objection was made. It was properly sustained as repetitious. As to a third, the witness fully answered at another point in the cross-examination the principal questions to which objections were once sustained—as to how intimate the witness' acquaintance with defendant was. As to two other witnesses we find no abuse of discretion in ruling on objections to questions asked on cross-examination. Direct testimony of three of the witnesses referred to was for a limited purpose only. The trial court so informed the jury and defendant's counsel expressed agreement with the court's admonition.

Defendant's argument refers to some rulings he contends unduly limited his cross-examination of plaintiff. Plaintiff was asked if Gelenne's sister, Donna Woods, in a conversation shortly

after the first divorce suit was commenced, "did not outline a series of acts of which you had been guilty toward your wife which she said in substance she felt your wife should leave you for." The court ruled the question was not cross-examination. We find no direct testimony of plaintiff concerning this conversation. Defendant did not call Donna Woods as a witness although her husband testified for him and Donna evidently was friendly with Gelenne.

An objection as repetitious was made and sustained after the question was answered favorably to defendant. The ruling did not have the effect of striking the testimony. The answer remained in the record. Correll v. Goodfellow, 255 Iowa 1237, 1247, 125 N.W.2d 745, 751, and citations. The fact thus shown clearly appears from other testimony in any event.

During the period of reconciliation plaintiff came home and found his wife in bed with their son (age 9). He testified she refused to sleep with him, called him a name to which we refer as "s.o.b." and he struck her—he said for the first and only time. The blow left marks on Gelenne's face. Plaintiff called the minister and he came to the home. Defendant asked plaintiff on cross-examination if the minister did not say to him after examining Gelenne and after certain other things, "You must have beat her." The court sustained plaintiff's objection as calling for a privileged communication between parishioner and minister. Reliance was apparently on section 622.10, Code, 1962.

This statute prevents a minister of the gospel from disclosing "any confidential communication properly entrusted to him in his professional capacity * * *." We have held the statute should be liberally construed and that the same statute prevents disclosure of knowledge and information gained by a physician from observation and personal examination of his patient in the discharge of his duties. Newman v. Blom, 249 Iowa 836, 843, 844, 89 N.W.2d 349, 354, 355, and citations; Bradshaw v. Iowa Methodist Hospital, 253 Iowa 1360, 1362, 115 N.W.2d 816, 817 (a four-to-four decision). We need not decide whether the objection was good. The ruling was not prejudicial. Plaintiff admitted the beating and it is fully shown by other evidence, including photographs of Gelenne's bruised condition.

Plaintiff was asked regarding execution of papers in his attorney's office. This also fully appears from other evidence, the papers were received as exhibits and the jury was instructed as to the purpose for which they should be considered.

The remaining ruling during plaintiff's testimony which is referred to in this division of defendant's argument does not come within any assigned error and might be ignored. The court overruled defendant's objection of hearsay to a question asked plaintiff on redirect examination. On cross-examination plaintiff testified he went to see two doctors, who had treated both him and his wife, about the wife's condition shortly after September 9, 1961. "I went to see Dr. Bos as to whether she was going through the change of life. * * * I certainly did not make any accusations against my wife at that time to Dr. Bos."

On redirect examination, referring to this same conversation with the doctor, plaintiff was asked what the doctor said. Over defendant's objection as hearsay plaintiff testified, using the doctor's claimed vulgar language we do not repeat, the doctor told him defendant said he had been having frequent sexual relations with Gelenne. It is this objection defendant argues should have been sustained.

Since defendant asked plaintiff on cross-examination about this conversation it was proper to show on redirect examination what was said. Section 622.19, Code, 1962, provides: "When part of [a] * * * conversation * * * is given in evidence by one party, the whole on the same subject may be inquired into by the other; * * *." See also section 622.20. Glatstein v. Grund, supra, 243 Iowa 541, 549, 51 N.W.2d 162, 168, 36 A. L. R.2d 531, and citations, are closely in point. Incidentally Doctor Bos, as defendant's witness, testified he had no memory of the above conversation.

There is no argument under this assigned error as to claimed limitation of defendant's cross-examination of Gelenne. As previously indicated, most of the questions asked her on direct examination for plaintiff were successfully objected to by her attorney on the ground answers might incriminate her and she was privileged not to answer. She did testify to her marriage, the names and ages of her children, her employment and a few

other similar matters. Defendant claimed on the trial this made it proper for him to show on cross-examination the trouble between Gelenne and plaintiff throughout the marriage. The court's ruling this was not proper cross-examination presents no abuse of discretion. Defendant later called Gelenne as his witness and she freely answered most of the questions asked her regarding the matters sought to be shown by defendant's cross-examination.

Defendant was not prevented from cross-examining plaintiff's witness Kelderman. Defendant's counsel announced he had no cross-examination after the court stated counsel could cross-examine as to the witness' direct testimony remaining in the record. We further consider the Kelderman testimony in a subsequent division.

 It is of course elementary the trial court has considerable discretion in determining the scope and extent of cross-examination. Colburn v. Krabill, 232 Iowa 290, 293, 3 N.W.2d 154, 156, and citations; Korf v. Fleming, 239 Iowa 501, 508–512, 32 N.W.2d 85, 89–92, 3 A. L. R.2d 270; Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 850, 102 N.W.2d 881, 888, 889. While a rather wide latitude is usually permitted we find no abuse of discretion in any respect assigned and argued.

V. Error is assigned in excluding evidence for defendant contradicting plaintiff's witnesses, particularly the testimony of Kornprobst and Gelenne.

Attention is called in argument to plaintiff's direct testimony that on October 23, 1961, Gelenne admitted in his presence she committed adultery with defendant. It is not argued this was improperly received. The court promptly admonished the jury it was not proof of the act itself nor that defendant did alienate Gelenne's affections but bore only on her state of affections and mind. The admonition as to this type of evidence was repeated in the written jury instructions.

 That declarations of the alienated spouse during the period of alienation may be shown as bearing on her state of mind and affections toward plaintiff and the effect of defendant's conduct upon her, see Glatstein v. Grund, supra, 243 Iowa 541,

548, 51 N.W.2d 162, 167, 36 A. L. R.2d 531, and citations; Kiger v. Meehan, supra, 253 Iowa 746, 751, 113 N.W.2d 743, 746, 747.

Just why attention is called to the above testimony of plaintiff is not apparent. No attempt was made to contradict it.

Defendant also calls attention in argument to plaintiff's direct testimony that just after he was sued for divorce on September 9, 1961, he was unable because of his health to complete two homes then under construction, his ulcer became active, he lost weight, his nerves were wrecked and still are, and he did not feel able to return to work until mid-July 1962 (in southern California). Plaintiff also identified on direct examination a letter Gelenne wrote the married daughter. It was received in evidence for the limited purpose of showing the state of Gelenne's affections.

The witness Kornprobst lived in Pomona, California, until he left his home late in August 1962. He was a witness for defendant. He first met plaintiff in Pomona about January 1, 1962, and they became good friends until mid-June. Defendant contends plaintiff was unduly familiar with Kornprobst's wife during this period after plaintiff and Gelenne had finally separated. No instance is pointed out of prejudicial, erroneous exclusion of Kornprobst's testimony and we find none in rulings on the relatively few objections made by plaintiff while he was a witness.

As before indicated, Gelenne testified as defendant's witness to acts of cruelty, rough language and indignities from plaintiff during much of their marriage. Attention is not called, by assignment or argument, to any improper exclusion of her testimony.

VI. Error is assigned in overruling defendant's motion for mistrial based on claimed misconduct of plaintiff's witness Kelderman. He testified he was manager of the local Sears mail-order department; he had known plaintiff, Gelenne and defendant several years; he had seen defendant in Gelenne's company more than once; "as to telling about one occasion and when and where it was I prefer not to answer; I was a former employee of defendant and I feel he has done me a great injustice and my answering would be a matter of revenge and I

don't believe revenge belongs to me * * *. I will be placed in ignominy before the public by going through this public display." Kelderman then said he was afraid defendant would take revenge on him if he were to testify.

Defendant's counsel made no objection to, or motion to strike, any of this witness' testimony. Indeed, when plaintiff asked him whether his fear was based upon some past observations, defendant's counsel said, "Go ahead and answer so far as we're concerned."

After the above testimony was given the court called for a conference with counsel and the witness in the jury's absence. As previously suggested by defendant's counsel, the court advised Kelderman he should have counsel to represent him and one would be appointed if he desired. The witness then requested such appointment and the court appointed the attorney who appeared for Gelenne at the trial and later for defendant. The attorney was given opportunity to and did confer with Kelderman. When the court asked if there was any objection on the part of any counsel, defendant's counsel replied, "I don't think so."

Defendant's counsel then moved for a mistrial on the ground the testimony above referred to was so prejudicial a fair trial could not be had. In support of the motion it was asserted a juror would assume from the testimony defendant had made some threat against the witness, even of grave physical violence, if he testified. At the conclusion of his motion counsel said he had a series of authorities in support of it.

It was revealed that just prior to the trial Kelderman told one of defendant's counsel of his desire not to testify and the attorney informed him of his right to counsel and "to use the constitutional amendment if so desired." Defendant's counsel expressed the belief plaintiff's attorneys did not bring out Kelderman's testimony intentionally—"I don't think they knew this was coming anymore than we did."

As suggested by plaintiff's counsel with the apparent approval of opposing counsel, the court questioned Kelderman in the jury's presence and it was clearly brought out no one had threatened the witness and his express fear was because of his

own thinking. The court then announced the trial would proceed. Counsel for defendant then, without waiving his motion, asked the court to admonish the jury "within the area his discretion dictates."

The court then strongly admonished the jury not to consider any testimony from Kelderman with reference to his fear. He also announced he would strike all such testimony on motion if someone would make it. After defendant's counsel declined to make such motion, plaintiff's attorney moved that all testimony of the witness following his statement he did not desire to testify be stricken. The motion was of course sustained and the jury again admonished to disregard such testimony. The court's written instructions informed the jury to disregard all evidence stricken from the record. As stated in a previous division, after being advised he could cross-examine on so much of Kelderman's testimony as remained in the record, defendant's counsel announced, "No cross-examination."

We have set out the record pertaining to this alleged error in much detail because it seems to be one of defendant's principal contentions here. We are clear the denial of the motion for mistrial was not reversible error. When the motion was made, the trial had been in progress at least a week. Thirteen witnesses preceded Kelderman. With previous knowledge at least of the witness' desire not to testify, defendant's counsel deliberately made no objection to any of the testimony given and no motion to strike any of it. Further, as stated, counsel told the witness to go ahead and answer a question in the latter part of his examination.

Defendant's claim in argument that Kelderman "in a coldly calculated manner" deliberately sought to prejudice the jury against him cannot be reconciled with the witness' express desire not to testify and his conference with defendant's counsel in an attempt to avoid doing so. It seems more reasonable to conclude plaintiff was deprived of a valuable witness by his unwillingness to testify. Statements in argument as to an uproar in the courtroom as a result of the testimony are not supported by the record.

At least three familiar rules lend support to the con-

clusion reached on this assignment. The trial court has considerable discretion in determining whether alleged misconduct, if there was such, was prejudicial. Certainly he is better able to appraise the situation than we are. State v. Jensen, 245 Iowa 1363, 1367, 1368, 66 N.W.2d 480, 482, and citations; Nicholson v. City of Des Moines, 246 Iowa 318, 329, 67 N.W.2d 533, 539, 540; State v. Case, 247 Iowa 1019, 1025–1030, 75 N.W.2d 233, 238–240.

A party cannot ordinarily complain of the receipt of evidence to which no timely objection was made, at least without a reasonable excuse for not objecting. So far as appears, defendant chose to gamble on the answers Kelderman would make. Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1262, 1263, 30 N.W.2d 97, 102, and citations; Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160, 41 A. L. R.2d 1397, and citations; Ver Steegh v. Flaugh, 251 Iowa 1011, 1017, 103 N.W.2d 718, 722.

Further, prompt withdrawal of testimony that is improper with such an admonition to the jury as was given here leaves no ground for complaint except in extreme instances where it is manifest its prejudicial effect remained and influenced the verdict despite its exclusion. Glatstein v. Grund, supra, 243 Iowa 541, 552, 51 N.W.2d 162, 170, 36 A. L. R.2d 531, and citations; State v. Miskell, 247 Iowa 678, 689, 690, 73 N.W.2d 36, 42, 43, and citations; State v. Olson, 249 Iowa 536, 554, 86 N.W.2d 214, 225.

VII. In framing some questions to the witness Kornprobst on cross-examination, plaintiff's counsel referred to some letters or copies thereof and postcards written by the witness, as well as his deposition or copy thereof taken a few days before the trial, all of which counsel had in his possession. None of these papers was identified, offered in evidence or shown the jury. At least one of the letters was written to the Castners' married daughter. At the conclusion of the cross-examination defendant's counsel demanded all letters and cards to which the cross-examiner made reference. Denial of the demand is assigned as error.

Plaintiff's counsel insisted some of the letters were directed

to him as a lawyer making inquiry as to facts and received in his investigation of the case and they were privileged under the Rules of Civil Procedure. Evidently rule 141(a) was relied upon. It provides in part: "* * * the court shall not order a * * * party to produce or submit for inspection any writing obtained or prepared by the adverse party, [or] his attorney * * * in anticipation of litigation or preparation for trial unless satisfied that the denial of production or inspection will result in an injustice or undue hardship; * * *."

This rule seems to make privileged letters obtained by plaintiff's counsel in anticipation of this litigation or preparation for trial unless the court was satisfied denial of production or inspection would result in injustice or undue hardship to defendant. If the statement of plaintiff's counsel is accepted— and nothing to the contrary is shown—at least some of the letters were privileged under this rule unless the court found not to produce them would "result in an injustice or undue hardship."

We have held determination of this question of injustice or undue hardship is left largely to the sound discretion of the trial court. Henke v. Iowa Home Mut. Cas. Co., 249 Iowa 614, 623, 87 N.W.2d 920, 926; Idem, 250 Iowa 1123, 1134, 97 N.W.2d 168, 175. See also Article by Professor Allan D. Vestal, 43 Iowa Law Review 8, 25, 33. Abuse of discretion does not appear here unless the statutory provisions about to be mentioned apply.

In support of this claimed error only Code section 622.20 is cited. In pertinent part it provides, "When a detached * * * writing is given in evidence, any other * * * writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." It would seem section 622.19, referred to in Division IV hereof, rather than 622.20, should have been cited.

As it relates to the point now considered, 622.19 states: "When part of [a] * * * writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; thus, when a letter is read, all other letters on the same subject between the same parties may be given."

654

We are not persuaded either of these two statutes entitled defendant's counsel to have produced all letters and postcards in the possession of opposing counsel to which he referred in framing some questions on cross-examination. As stated, no part of the letters was offered in evidence or shown the jury. Further, there is no showing and no fair indication anything in the letters would have helped defendant or that failure to produce them was prejudicial to him.

 VIII. Error is assigned in not directing a verdict for defendant. It is principally argued there is insufficient evidence the loss of affection of plaintiff's wife was caused by wrongful conduct of defendant. It is not contended Gelenne had affection for her husband when they separated—in fact it is asserted she had none. It can scarcely be argued there is no substantial evidence, when viewed in the light most favorable to plaintiff, of defendant's wrongful conduct. The point urged is that plaintiff's mistreatment was the cause of Gelenne's loss of affection. As indicated in Division III hereof, the jury could have so found. But it did not and we think the issue of causation (see Division II) was for the jury, not the court. No extended review of the evidence is called for.

There is testimony: Gelenne's attitude and affection toward plaintiff changed about 1958; before then she showed much affection for him in many ways; defendant was unduly attentive to Gelenne from 1958 until the separation; he was frequently at plaintiff's home alone with his wife both daytimes and evenings; when plaintiff would return home from work defendant would be lying on the floor; defendant phoned Gelenne frequently, sometimes three times in a single evening; when plaintiff and his wife were on a trip to California defendant phoned her from Iowa; many times defendant told Gelenne plaintiff had lost a big bundle of money gambling the night before; this was not true; defendant also told Gelenne plaintiff was going out with another woman—this also was untrue; when plaintiff and his wife were invited out or were eating out, sometimes in Des Moines, defendant would frequently appear although uninvited and plaintiff had not informed him where they would be; de-

fendant gave Gelenne gifts; one evening defendant and Gelenne met at a "Lovers' Lane" shortly after he phoned her.

Gelenne's brother testified as a witness for plaintiff he and his wife visited in plaintiff's home one to three times a week until two or three years before the trial; they stopped or lessened their visits because every time they went there over a period of three or more years defendant would appear; the witness asked defendant to leave the Castners alone and was told to mind his "own d---d business." Gelenne's mother and stepfather were also witnesses for plaintiff. Plaintiff told his wife she could not be seen talking to defendant as it would give her a bad reputation; she replied she would talk to defendant when and wherever she pleased.

As stated, since defendant did not testify and Gelenne's attorney successfully invoked the Fifth Amendment and other privileges for her to questions as to her conduct with defendant, most of the above testimony is not controverted.

This from Kiger v. Meehan, supra, 253 Iowa 746, 750, 113 N.W.2d 743, 746, is pertinent here: "There is evidence for the defendant that the plaintiff lost nothing in the way of wifely affection by defendant's conduct, because he did not have it before. But plaintiff's evidence is that he did have such affection and he is aided by the presumption set out above. Of course the causal connection between the wrongful conduct and plaintiff's loss must also appear. Here we enter into a field where direct proof is not possible. Mrs. Kiger denies having had any affection for the plaintiff, and so of course defendant's actions were not the cause of its loss. But we must consider that by plaintiff's evidence there was a loss of affections, and this loss commenced at the time of Mrs. Kiger's association with the defendant. A trier of facts might well infer there was a causal relation."

Glatstein v. Grund, supra, 243 Iowa 541, 545, 51 N.W.2d 162, 166, 36 A. L. R.2d 531, states wrongful conduct causes loss of affection where it is a substantial factor in bringing it about.

IX. Defendant complains that at the conclusion of evidence for plaintiff the trial was recessed from Friday evening to the following Wednesday during which the jury was not seg-

regated and was subjected to publicity in newspapers, radio and television regarding the case. The record shows no objection by defendant to this delay of two days longer than the usual week-end recess of trials nor because the jury was not segregated. There is no showing any juror read any newspaper account, heard any broadcast or talked to anyone about the case in disobedience to the court's admonitions required by Code sections 780.21, 780.22. The court's instructions also cautioned the jury to disregard all extraneous matters and base its verdict solely on the evidence, without sympathy, bias, passion or prejudice.

The point now urged was first raised in the motion for new trial. The trial court had considerable discretion in determining it. Abuse of discretion does not appear. Even if some jurors may have read something in the newspapers or heard some broadcast regarding the trial this would not necessarily entitle defendant to a new trial. "Something must appear which leads to the conclusion that the jury was unfairly influenced by these extraneous matters; and in determining this, the trial court has a considerable, although not always final, discretion." State v. McLaughlin, 250 Iowa 435, 447, 94 N.W.2d 303, 310. See also discussion and authorities in the cited opinion, including annotation, 31 A. L. R.2d 417, 421. Note 10 Drake Law Review 126, 128.

X. We consider the remaining assignments together. They are claimed errors "in permitting the jury to speculate upon the measure of damages" and refusal to grant a new trial because of the size of the verdict and the alleged prejudice existing in Mahaska County against defendant.

Much of the argument in support of the first of these assignments is virtually a repetition of the argument in support of the contention, considered in Division VIII, that a verdict for defendant should have been directed because, it is said, the loss of Gelenne's affections resulted from plaintiff's mistreatment of her. We have expressed our view this was a disputed fact question for the jury's determination.

Of course the value of the affection and companionship of a wife, and the damage resulting to the husband from the wrongful deprivation thereof, are impossible of mathematical

calculation. It is peculiarly the jury's function to award what it deems just compensation. We have approved what is said in 27 Am. Jur., Husband and Wife, section 543, page 142: "All courts recognize the difficulty, if not the impossibility, of formulating any rule to measure loss of consortium and affections in money, and * * * a wide latitude must be allowed the jury for the exercise of judgment. * * * The tendency of the courts is toward liberality in fixing such compensation." Glatstein v. Grund, supra, 243 Iowa 541, 557, 558, 51 N.W.2d 162, 172, 173, 36 A. L. R.2d 531, 546; Kiger v. Meehan, supra, 253 Iowa 746, 755, 113 N.W.2d 743, 749.

We find no error in permitting the jury to determine the damages to be awarded if it found plaintiff entitled to recover.

■ As stated at the outset, the verdict was for $45,000. On defendant's motion for new trial the court found this amount was not sustained by sufficient evidence and gave plaintiff the option to remit all in excess of $12,500 or submit to a new trial. The remittitur was filed. The contention a new trial should have been granted, rather than to provide for the remittitur, is mainly based on some language in the ruling on the motion for new trial. It is thought such language supports the view the verdict resulted from passion and prejudice and was not merely excessive as without sufficient evidential support.

■ Our decisions make it fairly clear that where the verdict is the result of passion and prejudice a new trial should be granted, but where it is merely excessive as without sufficient support in the evidence justice may be effectuated by ordering a remittitur of the excess as a condition of avoiding a new trial. Curnutt v. Wolf, 244 Iowa 683, 689, 57 N.W.2d 915, 919; Ferris v. Riley, 251 Iowa 400, 413, 414, 101 N.W.2d 176, 184; Miller v. Town of Ankeny, 253 Iowa 1055, 1063, 114 N.W.2d 910, 915, and citations in these opinions. The court's ruling clearly indicates an awareness of our rule that if the verdict results from passion and prejudice a new trial should be granted.

In the course of the ruling (not the order proper) it was stated substantial prejudice against defendant existed among spectators at the trial and throughout the county, creating a difficult atmosphere for defendant to receive a fair trial, and that

the size of the verdict was such as to raise a presumption it resulted from passion and prejudice. However, the court concluded he could not believe the verdict was the result of passion and prejudice in the light of the many admonitions given the jury but was due to a failure to evaluate the evidence properly, to such an extent the verdict was not supported by substantial evidence, and violated the rule of fair compensation. On the whole case the court did not find passion and prejudice.

The record indicates the court was unusually careful to assure defendant a fair trial and to see that it was orderly. It is not claimed the jury was not properly admonished or instructed as to the law. Presence of many spectators at the trial is not uncommon for a case involving such issues. There is no assurance fewer spectators would attend another trial if one were granted. In the light of the trial court's inability to find the verdict resulted from passion and prejudice there is insufficient basis for a contrary finding here.—Affirmed.

All JUSTICES concur.

### SUPPLEMENTAL OPINION.

GARFIELD, C. J.—It appears from defendant's petition for rehearing and plaintiff's resistance thereto that since the opinion herein was filed, plaintiff contends he has a valid judgment for $45,000, the amount of the jury verdict, rather than for $12,500, the amount of the verdict diminished by the remittitur of $32,500 filed by plaintiff. Basis for plaintiff's claim is the second paragraph of rule 250, R. C. P., added by amendment to the rule in 1953.

Rule 250, as so amended, provides:

"Conditional new trial. The court may permit a party to avoid a new trial under rule 243 or 244 by agreeing to such terms or conditions as it may impose, which shall then be shown of record and a judgment entered accordingly.

"Any such term or condition or judgment entered pursuant thereto shall be deemed of no force and effect and the original judgment entered pursuant to rule 223 shall be deemed reinstated in the event of an appeal."

No appeal involving this rule as amended seems to have come before us. It is clear that under the second paragraph of the rule the original judgment for $45,000 entered upon the verdict, as directed by rule 223, is to be deemed reinstated upon defendant's appeal. This amendment to rule 250 was not called to our attention in the brief and argument of either party here and was not considered by us. We considered defendant's appeal as taken "from judgment against him for the reduced amount."

Prior to the amendment to rule 250 we had held a judgment entered upon a jury verdict automatically became a judgment in the lesser amount immediately upon the filing of the remittitur. See Fox v. McCurnin, 210 Iowa 429, 433, 434, 228 N.W. 582, and citations.

■■■■ Since the filing of the petition for rehearing and resistance thereto we have again considered the matters discussed in Division X of the opinion. Plaintiff argues the entire verdict should be permitted to stand or, in the alternative, a smaller remittitur should be ordered here than the one provided by the trial court. We are not persuaded we should reach a different conclusion from the one the trial court did as to the amount of verdict which should be permitted to stand.

■■■■ Plaintiff concedes we have the inherent right to order a remittitur and modify the award to such sum as we deem just. Accordingly, it is ordered that if plaintiff files in the office of the clerk of this court, within 30 days from and after the filing hereof, a remittitur of so much of the judgment entered in the trial court for $45,000 as exceeds $12,500, with interest from January 28, 1963, at five percent per annum, and costs, the judgment shall stand affirmed as so modified. If such remittitur is not so filed, a new trial is hereby ordered. The cause is remanded for further proceedings in accordance with this opinion.

With this supplement to the original opinion, the petition for rehearing is overruled.—Modified and affirmed on condition, and remanded.