MARY DeToskey, administratrix of Estate of PAUL J. DeToskey, appellee, v. RUAN TRANSPORT CORPORATION dba RUAN TRANSPORTATION COMPANY, also dba RUAN MOTOR FREIGHT COMPANY, appellant.

No. 47540.

(Reported in 40 N.W. 2d 4)

46

Miller, Huebner & Miller, of. Des Moines, for appellant.

Abramson & Myers, of Des Moines, and Culver, Phillip, Kaufmann & Smith, of St. Joseph, Missouri, for appellee.

WENNERSTRUM, J.—Plaintiff's action at law is based on the claimed wrongful death of administratrix' intestate who was a railroad fireman. At the time of the accident that caused his death he was in the cab of a moving engine of the Chicago Great Western Railway Company. The engine struck an oil truck belonging to defendant which had stalled on a railway crossing. On submission of the issues to it, the jury found for plaintiff on the disputed questions relative to defendant's negligence, decedent's contributory negligence, the proximate cause of the accident, and the present worth of decedent's anticipated estate. The jury returned a verdict for $10,000 under instructions that it should take into consideration the amount previously received by the plaintiff from the railway company for a covenant not to sue. A motion for a new trial, on grounds which are substantially the same as those submitted as the basis for reversal in this court, was overruled by the trial court. Judgment was thereafter entered against the defendant and it has appealed.

Decedent had been employed as a locomotive.fireman by the Chicago Great Western Railway Company for a period of thirty years and was so employed at the time of the accident which caused his death. He was then sixty-one years of age. His gross wages for the year preceding his death had amounted to $4409.40. It was stipulated by the parties that decedent's life expectancy was 13.47 years, that his employment had been regular, and that the expenses of his funeral amounted to $666.08.

The evidence presented discloses that decedent was industri-

ous, his health had been good, and that his general habits were of a satisfactory nature. His wife, the plaintiff-administratrix, and four children who were all grown to maturity survived decedent. There is evidence that he paid taxes on a home and maintained it, but there is no statement in the record who owned it or whether decedent contributed to its purchase. It is shown that each of the children had obtained a high school education financed by their father and that at the time of his death decedent had in cash and bonds approximately $1000.

Appellee in her pleadings admitted that she had received from the railway company the sum of $13,325, but denied that the payment was in settlement of a claim for damages on account of the death of decedent growing out of the accident. It is appellee's assertion that the payment made by the railway company was in consideration of the receipt by it from this appellee of a covenant not to sue. This covenant was made a part of the pleadings.

The appellant asserts in substance as grounds for reversal that (1) the verdict of $10,000, taking into consideration the amount received for the covenant not to sue the railway company, is excessive and that the jury was influenced and affected by passion and prejudice; (2) that the verdict is not sustained by the evidence and is contrary to the evidence; (3) that the verdict is contrary to the law submitted by the trial court in its instructions; and (4) the amount of the verdict is so excessive that it is not supported or sustained by the evidence.

It is very apparent, in fact it is not controverted, that the only question presented for our review is the claimed excessiveness of the verdict. In other words, we are presented with the issue whether the sum of $23,325 is too large a recovery by appellee's estate, taking into consideration the amount received for the covenant not to sue and the amount of the judgment in the instant case. The appellant would have this court grant a new trial in that it is claimed the trial court refused to set aside or reduce what is claimed to be an excessive verdict. By reason of the limited nature of the issues presented to us for review, we do not deem it necessary to set out any of the facts relative to the accident that caused decedent's death. The statements heretofore set forth are sufficient for our determination of the issue presented.

■ I. In each case where a death has occurred and the amount of the verdict is the matter to be determined, the jury and the court can and should take into consideration the life expectancy of the decedent and other facts which will vary in individual cases including the decedent's character, health, habits, talents, prospects, contributions to dependents, and other facts and circumstances upon which juries may have differences of opinions. Nicoll v. Sweet, 163 Iowa 683, 695, 144 N.W. 615, L.R.A. 1918C 1099, Ann. Cas. 1916C 661; Thoirs v. Pounsford, 210 Minn. 462, 465, 299 N.W. 16, 18. The consideration to be given to the factors heretofore set forth should be determined in connection with the ultimate decision the jury is required to reach under the instruction somewhat similar to the one given in the instant case that the recovery, if any, should be: "Such sum as equals the present worth of the net value of what would have been the estate of Paul J. DeToskey, deceased, acquired by him if he had not suffered the accident in question, but had survived."

■■ II. In considering the question of the claimed excessiveness of a verdict, we must keep in mind that it is within the province of the jury to determine the amount to be allowed in any particular case. Until our system of jurisprudence determines that some other system is more satisfactory and more accurate in arriving at the real damage, we must leave it to our juries to set the amount of recovery. We have endeavored without success to reconcile the various theories of computing the possible verdicts respectively made by counsel for the appellant and appellee. We cannot as yet say that this court is in a position to determine the exact value of an individual's life. There are too many factors to be taken into consideration. Besides, that is the province of the jury.

We believe that our statement in the early case of Collins v. City of Council Bluffs, 32 Iowa 324, 331, 332, 7 Am. Rep. 200, 205, can be applicably quoted here even though in that case a claim for damages for wrongful death was not an issue. We there stated:

"It is the duty of the jury to assess the damages in cases of this character; the law imposes that duty upon them in consideration of their fitness to discharge it. Neither in fact nor in law are courts better prepared to discharge it; they are not under the

law charged with that delicate duty, and should not indirectly assume its exercise when, according to their judgments, verdicts do not accord with their views in the exact amount of damages allowed. If we may remit a part of a judgment, or direct a new trial simply because we think a verdict is for too great a sum, why may we not add to a judgment or order a verdict when, in our opinion, the verdict is not sufficient in amount? In no case ought a verdict be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice or undue influence, and not the result of an honest exercise of the judgment and the lawful discretion of the jury."

And then too, in determining the possible value of a decedent's estate if he had lived out his expectancy, we as well as the jury can and should consider the reduced purchasing power of a dollar, as it is affected by changing economic conditions and the possible return on prime investments. Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W. 2d 337.

A recent apparently authoritative source states that the relative purchasing power of a consumer's dollar based on a $1.00 unit in 1914 has changed as follows: 1920—$.50; 1926—$.57; 1933—$.78; 1939—$.72; and in 1949—$.43. If these figures are approximately correct it merely goes to show the futility of endeavoring to determine the excessiveness of a verdict from a mathematical or comparative basis.

Consequently, we find it difficult to reconcile the verdicts of certain juries and some of our cases in which we heretofore held some verdicts as excessive. In fact it is virtually impossible to do so. All we can do and should do is to leave the matter of the verdict to the jury in any particular case. Only when it can be affirmatively shown that prejudice and passion existed should this court interfere, or when there has been an apparent disregard of the evidence or of the law as given in the instructions. Grafton v. Delano, 175 Iowa 483, 492, 154 N.W. 1009; Engle v. Nelson, 220 Iowa 771, 784, 785, 263 N.W. 505. It has also been stated by this court that a further test for determining whether a verdict should be set aside because of its excessiveness or inadequacy is that it shocks the conscience. In re Estate of Hollis, 235 Iowa 753, 760, 16 N.W. 2d 599, and cases cited.

III. The determination of the question whether a ver-

dict of $10,000, taking into consideration the amount of $13,325 paid intestate's administratrix by the railway company is excessive, cannot be determined by comparison of cases. For example, if we should take the case of Lorimer v. Hutchinson Ice Cream Co., 1933, 216 Iowa 384, 394, 249 N.W. 220, we find from the facts there. disclosed that at the time of the death of the decedent there concerned he was sixty-nine years of age and earning $75 per month. His expectancy was 8.33 years. In that case this court reduced a verdict of $7500 to $4000. If that reduced verdict can be taken as a criterion and as a basis for comparison we find that the decedent in the instant case was earning approximately 4.88 times as much as the decedent in the Lorimer case. If the verdict of $4000 in that case was a proper one on the basis of the earnings considered, then if the earnings as in the present case are 4.88 times greater, the sum of $19,520 should be considered for further computation. In the Lorimer case the life expectancy was 8.33 years and in the instant case the decedent's expectancy was 13.47 years. In the case here under consideration the life expectancy is almost 62% greater. If the amount of $19,-520 can be considered and the increased expectancy also considered, a verdict in excess of that returned in the present case would have been justified. It is thus apparent that comparisons and mathematical computations cannot be of assistance in determining the excessiveness of a verdict. Comparison of verdicts is not a satisfactory method for determining the reasonableness of an award in a particular case. Each case must be determined by the particular facts disclosed by the evidence. Dunham v. Des Moines Ry. Co., 240 Iowa 421, 35 N.W. 2d 578.

IV. In determining the fact question what might have been the value of the decedent's estate had the accident and the resulting death not occurred, we believe that the jury was justified in considering some pertinent information disclosed by the evidence. DeToskey had earned during the prior year the sum of $4409.40. His life expectancy was 13.47 years. If the decedent's. earning power had continued in the same amount, he would have had total earnings of $59,394.61. The jury also might have taken into consideration that with the advance of age his earning power might have decreased. Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 394, 249 N.W. 220. Another factor that the jury might

have taken into consideration was that the decedent's children were all grown to maturity. There was no showing of the necessity of or obligation for unusual expenses for their care or that of the wife. Under such circumstances it would be a legitimate conclusion for the jury to consider that greater savings would have been possible during the subsequent years of decedent's expectancy. A further circumstance that was considered by the jury, under instructions by the court, was that only interest on the funeral expenses was recoverable. Under all these circumstances shown, as well as a consideration of the return on an investment at approximately 2½% or slightly less, which is the present rate on high-grade securities, we feel that the jury properly could reach the verdict it did. In other words, the verdict, in our judgment, finds support in the evidence.

V. We have observed in appellant's brief comments concerning our recent case of Dunham v. Des Moines Ry. Co., 240 Iowa 421, 35 N.W. 2d 578. It is the thought of appellant's counsel that this court in its consideration of the cited case perhaps did not give due consideration to all the rules of law that counsel feels are applicable to cases of this character. We are conscious of the fact that a trial court, as well as an appellate court, has supervisory control of jury verdicts when and if there is an insufficiency of evidence to support them. However, we feel that in the Dunham case there was in evidence a basis for the verdict returned and that this court was justified in reinstating it as returned. We reaffirm and approve our holdings and expressions therein made.

We have reached the conclusion that the verdict in the instant case finds support in the evidence, that there has not been a showing of prejudice or passion on the part of the jury in setting the amount of the verdict that it did, and that the verdict as returned was not excessive. We therefore affirm.—Affirmed.

All JUSTICES concur.