PAUL E. MEAD, administrator of estate of Jackie Earl Mead, deceased, appellant, v. L. W. SCOTT, CHICAGO & NORTH WESTERN RAILWAY Co. and DAVID M. RISDAL, appellees.

No. 51473.

(Reported in 130 N.W.2d 641)

October 20, 1964.

D. W. Countryman, of Nevada, for appellant.

Davis, Huebner, Johnson & Burt, of Des Moines, and Donald L. Nelson, of Nevada, for appellees L. W. Scott and Chicago & North Western Railway Co.

Smedal, Maurer & Brewer, of Ames, for appellee David M. Risdal.

Garfield, C. J.—Plaintiff Paul E. Mead, as administrator of his deceased son's estate, brought this law action to recover for his death against the Chicago & North Western Railway Company, L. W. Scott, engineer of the freight train that collided with the automobile in which decedent was a passenger, and David M. Risdal, owner of the automobile being driven with his consent. Recovery was sought from the railroad and Scott on the ground they were negligent in operating the train and from Risdal on the ground his son drove the automobile recklessly. Following trial there was a jury verdict for all defendants. From judgment thereon plaintiff has appealed.

Plaintiff's contentions upon this appeal relate primarily to his case against the railroad and its engineer. At least it is not claimed the judgment in defendant Risdal's favor should

be reversed if the judgment for the other two defendants should be affirmed.

The grade crossing is at the west edge of the town of Colo (1960 population 574). The two boys had stopped on Main Street which in general parallels the railroad tracks. The automobile was then driven west on Main Street to the north-south street which crosses the railroad tracks about a half block north of Main Street, and then turned north onto the crossing where it collided with the front of the west-bound train. The railroad has double tracks and the train was traveling on the south (left-hand) track at about 60 miles an hour. The automobile was going only 15 to 20 miles per hour. The collision occurred about 10:35 a. m., December 22, 1962. Heavy, wet snow was falling. The automobile was carried and thrown about 150 feet west and a little south of the crossing. Both boys were killed.

I. Plaintiff's first assigned error is that the jury should have been permitted to return a verdict against the railroad even though it found in favor of defendant engineer. The contention cannot be accepted.

The court submitted to the jury only three charges of negligence against Scott and the railroad—that Scott was negligent in 1) operating the train at excessive speed, and 2) failure to ring the bell, and 3) sound the whistle. Although plaintiff's petition makes several other charges of negligence he did not object to the failure to submit others to the jury. No such objection is, or could be, made here. Rule 196, Rules of Civil Procedure.

Plaintiff did object to the court's failure to submit a form of verdict against the railway only. The trial court correctly ruled that the engineer was admittedly in charge of speed, bell and whistle and the only way in which the railroad could be liable would be if the engineer was negligent. The jury was properly instructed that negligence of Scott in one or more of the respects submitted would be charged to the railroad.

Plaintiff's argument is that the railroad could properly be found negligent for excessive speed of the train even if the engineer were free from negligence in this regard. It is not

claimed this would be true of the other two submitted charges of negligence. We understand plaintiff to reason that since the question of excess speed should be determined in the light of surrounding circumstances of weather, visibility of the train and other physical facts for which the engineer is not responsible, the railroad might alone be liable for speed. The argument is unsound. These and other circumstances should be considered on the question whether the engineer was negligent in fixing the speed of the train. Circumstances alone would not render the railroad liable for speed if the engineer should be exonerated of this charge.

The only authority cited for this assigned error is Wickman v. Illinois Central R. Co., 253 Iowa 912, 914, 915, 114 N.W.2d 627, 628. We do not find it supports the claimed error. Indeed we think it is unfavorable to plaintiff. The language relied upon deals with whether the railroad there could be found liable for failure to place a watchman, some safety device or adequate warning signs at the crossing—obviously a failure for which the railroad alone might be liable and over which the trainmen had no control. As before indicated, it is not contended similar charges of negligence in the petition here should have been submitted to the jury.

We think the point under discussion is ruled by Lahr v. Chicago & N.W. R. Co., 212 Iowa 544, 553, 554, 234 N.W. 223, and citations; Glass v. Hutchinson Ice Cream Co., 214 Iowa 825, 833, 243 N.W. 352. See also Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1199, 91 N.W.2d 380, 388.

II. Error is assigned in not granting a new trial because of misconduct of three jurors in visiting the scene of the accident for the purpose of viewing it.

Attached to plaintiff's motion for new trial was the affidavit of a juror that she and two other lady jurors visited the scene of the accident during the trial for the purpose of viewing it. It was a very clear day. As stated, it was snowing when the accident occurred. The affidavit recites: "I saw the house on the right and realized it plus poor visibility would make it hard to see a train coming from the east. I was impressed by the fact

the distance [179 feet] from the corner [on Main Street] to the track was very short or appeared so to me."

The affidavit goes on to state that when the jury got into the jury room a juror asked if anyone had gone to the place of the accident; the affiant said she had; the first juror then said "that made it a mistrial and we might as well go home"; as the affiant was about to report (evidently to the trial judge) her visiting the place, someone said that would not make a difference and she did not report it. The affidavit also recites that one of the jurors who accompanied affiant was one of the principal spokesmen in favor of the railroad and "the impression I got from what she said was it had not been proved the railroad was negligent."

No counter-affidavits were filed nor was oral testimony taken in support or defense of this ground of the motion for new trial.

Of course it was misconduct for the three jurors to visit the place of the accident. Rule 194, Rules of Civil Procedure, in pertinent part, provides: "When the court deems proper, it may order an officer to conduct the jury in a body to view any * * * place where a material fact occurred, and show it to them." But misconduct of the jury is not a ground for new trial unless it "materially affected * * * substantial rights" of the "aggrieved party" or "prevented the movant from having a fair trial" (rule 244, R. C. P.).

We have held many times that to justify a new trial because of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable did, influence the verdict. Also that the trial court has a good deal of discretion in passing on such a ground. We will not interfere with his ruling unless it is reasonably clear such discretion has been abused. Hackaday v. Brackelsburg, 248 Iowa 1346, 1350, 1351, 85 N.W.2d 514, 517, and citations. (Three of the citations are in 248 Iowa.) See also Bashford v. Slater, 250 Iowa 857, 867, 868, 96 N.W.2d 904, 910, 911, and citations; Volume 10 Drake Law Review 126, 127.

The trial court presumably found the jurors' misconduct probably did not influence the verdict or prevent plaintiff from

receiving a fair trial. It does not clearly appear this was an abuse of discretion.

Plaintiff places much reliance on Skinner v. Cron, 206 Iowa 338, 220 N.W. 341. We think a stronger showing of misconduct of jurors was there made.. One or more jurors "visited the scene of the collision, viewed the premises, and made estimates as to the ability of the witnesses to observe the collision from the place where they testified that they observed it, and sought out the street intersection where the collision occurred, and examined and measured the same, with the view of arriving at a conclusion as to how the accident happened, apart from the evidence * * *" (pages 339, 340 of 206 Iowa). We also held the trial court abused its discretion by refusing to hear oral testimony of jurors summoned by the aggrieved party. Skinner v. Cron is discussed in a note in 37 Iowa Law Review 399, 401–404.

▉ Here no controversy really existed over the matters these jurors observed. Although, as stated, it was a clear day when they visited the scene, the affidavit indicates the affiant then had in mind the poor visibility on the day of the accident. The principal impression the affiant apparently received from this view of the scene is that it would be "hard to see a train coming from the east." In these railroad crossing cases it is frequently contended poor visibility at the crossing is a circumstance favorable to the injured party rather than to the railroad.

III. Plaintiff's third assignment is based on the exclusion of evidence of prior fatalities at this crossing for the purpose of showing it was more than ordinarily hazardous.

▉ In Iowa evidence of prior accidents and near accidents at a railroad grade crossing is admissible for the purpose of showing it was more than ordinarily hazardous. However, it must appear conditions were comparable and the occurrences not too remote. Berk v. Arendts, 254 Iowa 363, 370, 117 N.W.2d 905, 909, and citations. See also Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1264, 30 N.W.2d 97, 103, and citations.

▉ The evidence offered here fails to meet the test of comparability and nonremoteness in time. In fact it affirmatively

appears conditions were not comparable and the other accidents were too remote in time.

The most recent fatality sought to be shown occurred more than 24 years before the present ones. That automobile was going south, into town, rather than north. The accident was at night. It was not known whether the wigwag signals with flashing lights, which were present when the instant accident occurred, had then been installed. The next most recent fatality was in 1925. There is no evidence the wigwag signals were then in place. Which direction the vehicle was traveling or whether in day or night are not shown. A fatality occurred about 1912 at dusk. The wigwag signals had not been installed. The other fatalities were of two people in a horse-drawn buggy before 1911. Nothing is shown as to the circumstances.

It was not error to exclude the offered evidence of prior fatalities at the crossing. Berk v. Arendts, supra, 254 Iowa 363, 370–372, 117 N.W.2d 905, 909, 910.

■ IV. Error is assigned in the court's refusal to permit plaintiff's counsel to refer to prior accidents at the crossing in voir dire examination of jurors and opening statement to the jury.

At the opening of the trial counsel for the railroad and its engineer asked the court for such a ruling. Counsel evidently then knew the intention of plaintiff's counsel to refer to such prior accidents in voir dire examination of jurors and opening statement to the jury. This knowledge may have come from interrogatories plaintiff put to these defendants before trial. Defendants' counsel advised the court they were prepared to show the latest prior fatality occurred in 1938 at night, the automobile was traveling south, it was struck by a streamlined passenger train, and stockyards were then, but not now, just northeast of the crossing. Counsel also said the other accidents occurred in 1925 or earlier, with no showing of similarity of conditions, and to permit reference to them in the voir dire examination of jurors and opening statement to the jury would place before them matters that could not be shown by competent evidence.

Although the court made the ruling referred to, he stated

plaintiff's counsel would be given opportunity to offer proof of prior accidents in the jury's absence and if the evidence appeared to be competent it could be offered with the jury present. This opportunity was afforded plaintiff. The last Division (III) hereof refers to all the offered evidence of prior fatalities at this crossing and holds it was properly excluded.

The present assignment is without merit. It boils down to the contention that plaintiff's counsel should have been allowed to inform the jury panel and the jury selected for the trial of claimed facts which could not be shown by competent evidence.

■ It is unnecessary to invoke the rule that the extent of counsel's voir dire examination of jurors is within the trial court's discretion. Certainly no abuse of discretion appears here. Our conclusion may rest on the rule that the voir dire examination should not be used to inject prejudicial matter improperly into the minds of the jury. See State v. Dalton, 254 Iowa 96, 99, 100, 116 N.W.2d 451, 453, and citations; 50 C. J. S., Juries, section 275a, pages 1039, 1040; 31 Am. Jur., Jury, section 138.

Like rules prevail as to opening statements to the jury selected for the trial. 88 C. J. S., Trial, section 161a, page 311; Guckenberger v. Shank, 110 Ind. App. 442, 37 N.E.2d 708, 713, and citation; Fossum v. Zurn, 78 S. D. 260, 100 N.W.2d 805, 807, 808, and citations. See also State v. Teager, 222 Iowa 391, 398, 269 N.W. 348; Johnson v. Kinney, 232 Iowa 1016, 1023, 1024, 7 N.W.2d 188, 193, 144 A. L. R. 997, 1004, and citations; Annotation, 118 A. L. R. 543.

We are not to be understood as holding a rather wide latitude is not ordinarily allowed counsel as to what to say in opening statement to the jury, nor that counsel's mere reference in good faith to what he expects to prove is improper when it later develops the matter is not proved.

■ V. Error is assigned in excluding from evidence in rebuttal a portion of the depositions of engineer Scott and fireman Goldsworth offered for impeachment purposes. Both were witnesses for defendants upon the trial. Plaintiff also offered portions of Scott's deposition in his main case as admissions against interest and they were received without objection. When plaintiff offered the answers from the depositions of

Scott and Goldsworth in rebuttal for impeachment purposes they were excluded, upon defendants' objection, on the ground the attention of neither witness was called to the claimed prior inconsistent statements (in his deposition) when he testified in court.

The ruling on the objection to the answers of the witness Goldsworth was clearly correct. He was not a party to the action. In order to impeach a witness of an adverse party by testimony of prior inconsistent statements a foundation must first be laid by giving him an opportunity to affirm or deny making the prior statements. This was not done here. Law v. Hemmingsen, 249 Iowa 820, 834, 835, 89 N.W.2d 386, 396, and citations.

Correctness of the ruling excluding an answer in the deposition of defendant Scott, on the ground asserted, is more doubtful. He was a party to the action. Rule 144, R. C. P., provides, so far as material: "Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial * * *: (a) To impeach or contradict deponent's testimony as a witness; or (b) For any purpose if, when it was taken, deponent was a party adverse to the offeror, * * *."

Plaintiff took advantage of clause (b), supra, by offering part of Scott's deposition in his main case as admissions against interest. The answer in the deposition offered in rebuttal for impeachment of the witness could have been offered as part of the admissions against interest regardless of whether Scott was a witness on the trial. Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 277, 278, 106 N.W.2d 579, 583; Beletti v. Schuster, 253 Iowa 1166, 1170, 1171, 115 N.W.2d 858, 861, 862; White v. Walstrom, 254 Iowa 646, 650, 651, 118 N.W.2d 578, 581.

There is some conflict of authority as to the necessity of laying the foundation for impeachment of a witness who is an adverse party by showing prior statements inconsistent with his testimony on the trial, at least where such statements would be admissible as admissions against interest. 58 Am. Jur., Witnesses, section 777; 98 C. J. S., Witnesses, section 600.

Our attention is not called to any Iowa decision which clearly and squarely decides this question. It may be claimed

rule 144(b), R. C. P., supra, does not require the laying of such foundation with a witness-party and that language in the precedents last cited is to that effect. State v. Chingren, 105 Iowa 169, 174, 74 N.W. 946, holds a prior inconsistent statement of a defendant in a criminal case might be shown in rebuttal "without laying the foundation, as he was a party to the action." See also Streblow v. Sylvester, 195 Iowa 168, 170, 191 N.W. 788, and citations; Noble v. United Benefit Life Ins. Co., 230 Iowa 471, 483, 297 N.W. 881, 887.

▇▇▇ Without pursuing the point further at this time, we prefer not to hold that the ground on which the trial court sustained the objection to the offer of an answer in the deposition of defendant Scott was good. We are clear, however, the ruling, if erroneous, was without sufficient prejudice to plaintiff to warrant a reversal.

On cross-examination of defendant Scott he was asked if, on the day in question, the throttle of the Diesel engine was not forward. He replied, "No, it was not forward—yes, it was forward. It was drifting, shut off." The answer in the deposition which was offered in rebuttal and excluded was, "On all these engines you can't hear your bell with your windows shut and when the train is working, your engines are running."

Counsel for plaintiff thinks the statement "your engines are running" conflicts with Scott's earlier statement that the throttle was "drifting, shut off." Defendants assert the two statements do not conflict—in effect, that Diesel locomotive engines may be running although the throttle is "drifting, shut off." Meaning of the last quoted statement is not explained in the record and we do not pose as experts on the running of Diesel locomotives. Conflict in the two statements is not apparent.

Further, engineer Scott as a witness for defendants gave an answer very similar to the one in the deposition which was excluded. Asked if he knew whether the bell on the engine was ringing as he approached and traversed the crossing, he answered, "I don't know. I can't hear with the windows closed and the engines working." Beletti v. Schuster, supra, 253 Iowa 1166, 1171, 1172, 115 N.W.2d 858, 862, is somewhat in point.

Scott was questioned rather fully as to the speed of the train. He testified several times it was going about 60 miles per hour and that he might have made the statement soon after the collision, "We were going like hell." Fireman Goldsworth testified, "The train was going in the neighborhood of 55 to 60 miles per hour", but he did not recall whether it "was under full throttle." On the issue of speed the important question was how fast the train was traveling.

▇▇▇ VI. Plaintiff's final claim of error is in not granting a new trial in the interest of justice because defendants' attorney did not immediately notify plaintiff's attorney of known changes in a discovery deposition rather than to wait until the trial to reveal them.

Two matters are complained of. The first is that the railroad answered an interrogatory filed about four months before trial as to prior fatalities at the crossing by saying it had no record of any such fatalities. Counsel for defendants insists the answer was true when made and his subsequent knowledge of prior fatalities was developed through the deputy sheriff. There is nothing to refute this. In any event, evidently plaintiff acquired before the trial full knowledge of the prior fatalities and, as we have held in Division III, evidence thereof was rightly excluded. It is not apparent plaintiff was prejudiced by the railroad's answer to the interrogatory.

In a discovery deposition taken before trial fireman Goldsworth said he first saw the automobile involved in the collision when the train was about 200 feet east of the crossing and the automobile was turning north from Main Street, about 179 feet to the south. Goldsworth testified at the trial that the week previously, at the suggestion of defendants' counsel, he went to the scene of the accident, made an observation from the cab of an engine of the same model and size as to his visibility when 200 feet from the crossing and found he was mistaken in the answer he gave in his deposition. At the trial Goldsworth testified the automobile was "about to the crossbuck" when he first observed it as the engine was 200 feet from the crossing.

The complaint of plaintiff's counsel is that defendants' counsel did not immediately notify him Goldsworth would change

the answer in his deposition rather than wait until the trial to divulge the information. In support of the complaint plaintiff argues that his claim the driver of the automobile was reckless was weakened by the fireman's changed version of his observation of the automobile.

While defendants' counsel, as a matter of courtesy or ethics, might have advised plaintiff's counsel before the trial the fireman had concluded he was mistaken in the part of his deposition referred to, we are unaware of any legal duty which required it and no precedent is cited to support the complaint that failure to notify plaintiff's counsel entitled him to a new trial.

We will say further that neither complaint considered in this division was made in plaintiff's motion for new trial or otherwise in the trial court, as by motion for continuance, so far as the record shows. The conclusion reached in this division might well be based on failure to raise the questions in the trial court.

An interesting note on "The 'Continuing' Nature of Discovery Techniques" appears in 42 Iowa Law Review 579.— Affirmed.

All JUSTICES concur except HAYS, J., not sitting.