Charles B. OLDSEN, Executor of the Estate of Boyd C. Oldsen, Deceased, Appellee,

v.

Gary JARVIS and Bernard Jarvis, Appellants.

No. 52937.

Supreme Court of Iowa.

June 11, 1968.

**432**

Theodore T. Duffield, Des Moines, for appellants.

Thomas L. McCullough, Sac City, for appellee.

GARFIELD, Chief Justice.

This is a law action to recover from the operator and owner of an automobile, for negligently causing the death of plaintiff's decedent, a pedestrian in a crosswalk. Defendants have appealed from judgment on jury verdict against them.

Three errors are assigned: (1) Claimed excessiveness of the verdict for $15,000; (2) failure to grant a mistrial because of alleged improper jury argument by plaintiff's counsel; and (3) allowing the chief of police to testify as to location and length of skid marks when, it is said, the testimony was based on hearsay. The first of these is relied upon most and we consider it first.

I. The fatal injury occurred in Sac City August 27, 1966 about 8:35 p. m. when decedent, age 83, was walking north in a crosswalk across Main Street (U. S. Highway 20). A car driven by defendant Gary Jarvis, age 18, with the consent of the owner, Gary's father Bernard Jarvis,

struck decedent when he was nearly half way across the street. Decedent's doctor happened to witness the accident and immediately went to his aid. A "hypo" of 100 milligrams of demerol for relief of pain was administered at the scene. An ambulance was called and decedent was admitted to the hospital in Sac City at 9 o'clock. A second "hypo" was given at 10:10 when the doctor thought the first one was starting to wear off. Decedent died at 10:24.

X-rays taken after death revealed a massive fracture of the left pelvis from the top down through the lower pelvis and a fracture of the right hip and knee. Death came as a result of shock due to the injuries and internal bleeding. Decedent complained of a lot of pain and of numbness and pain in both legs; he repeated over and over "Boy, oh boy, it hurts so bad." He was conscious until a few moments before his death and knew he had been horribly injured.

Decedent was a retired carpenter and cabinet maker. His income tax returns for 1961 and later years gave his occupation as retired. He had come to this country from Germany in 1909 at the age of 26. He was married about 1921. They adopted their only child, a son, at the age of 18 months. He lived in California about the last 15 years. Decedent sent him through Iowa State College and he became an engineer. Decedent's wife died about three years before he did.

Decedent had a deformed left elbow caused by a broken arm sustained in a fall and an inguinal hernia. Otherwise he was in good health for one of his age. Before he retired he was a hard worker, did his work well and was thrifty. He was well liked.

His tax returns for the last five calendar years show no income from his work. The only income reported was from rentals. He also received about $100 a month social security. In 1954 decedent purchased an old fire station for $2339.41 which was re-

modeled into offices below and apartments above. Decedent did as much of the remodeling work as he could. In 1958 a new water system was installed at a cost of $1364.51. Decedent lived in one of the apartments after his wife died and looked after the building, making minor repairs, watching the furnace, and sweeping.

Before his wife's death she and Mr. Oldsen lived in one of four living units in a remodeled older home. He sold this building after his wife died for around $11,000 with which he paid off the mortgage on the fire station building. In addition to that building decedent owned a vacant lot the adopted son valued at $1500. The remodeled fire station and contents he valued at $15,000. Decedent had $1524.75 in the bank when he died, an old car valued at $100 and $1000 life insurance.

Decedent owed a note at the bank for $1000 or $1500. His hospital bill was $91.-70, his doctor bill $60 and the bill for his funeral and burial was $1102.08. Social Security paid about $200 to $250 of this last amount.

The Commissioner's Standard Mortality Tables show the average life expectancy of a person aged 83 is 4.89 years.

II. The jury was instructed that for plaintiff to recover, the burden was upon him to establish by a preponderance of the evidence that: (1) defendant driver was negligent in some particular as charged by plaintiff; (2) such negligence was the proximate cause of the accident and resulting death and damage; and (3) the estate suffered some pecuniary damage and the extent thereof.

On the measure of recovery the jury was instructed it could allow: (1) the fair and reasonable value of medical and hospital service as shown by the evidence; (2) such amount as would fairly and reasonably compensate for decedent's pain and suffering adding that such amount cannot be measured by any exact or mathematical standard but must rest in the jury's sound discretion based upon a fair and impartial consideration of the evidence; (3) the present worth or value of the estate decedent would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death if he had lived out the term of his natural life; and (4) reasonable interest on the sum paid for funeral expenses, not exceeding what is reasonable and proper, for the time the estate was compelled to pay such expenses in advance of the normal date of death.

The instruction went on to say the total recovery for the four items mentioned, i. e., medical and hospital services, pain and suffering, death of decedent and funeral expenses, must be limited to the amount shown by the evidence.

No objection was made to any of the instructions and they therefore stand as the law of the case. Hurtig v. Bjork, 258 Iowa 155, 157–158, 138 N.W.2d 62, 64, and citations. The instruction on measure of plaintiff's recovery closely follows Instructions 3.09, on pain and suffering, and 3.10, on death, of Uniform Jury Instructions prepared by a committee of Iowa State Bar Association and accords with many of our decisions.

The trial court's ruling on defendants' motion for new trial contains this: "Most seriously contended is that the verdict is excessive. The court has given considerable thought to requiring a remittitur. The judgment is for $15,000 and the evidence of loss to the estate of accumulations would not support so high an amount. There is, however, considerable evidence as to excruciating pain suffered by decedent during the short period he lived following the accident. This evidence was extremely strong. Any attempt as required by the law of damages to equate money with suffering is bound to be imperfect and fraught with a certain amount of danger. Upon considerable reflection this court determines it should not interfere."

■ We have held many times we will interfere with a verdict because of its size where it is lacking in evidential support although there may be no passion or prejudice. Allen v. Lindeman, 259 Iowa 1384, 1399, 148 N.W.2d 610, 620–621 and citations; In re Estate of Ronfeldt, Iowa, 152 N.W.2d 837, 847.

■ It is of course true, as the jury was instructed, that damages for pain and suffering cannot be measured by any exact or mathematical standard and rest in the sound discretion of the jury based upon a fair and impartial consideration of the evidence.

III. The trial court's conclusion is inescapable that the evidence of pecuniary loss to the estate of accumulations from decedent's own efforts does not support such an amount as $15,000. In fact the only theory on which this verdict may be upheld is that the evidence of pain and suffering during the two hours decedent survived the injury supports an award for this item of damage that equals a considerable part of the total recovery. Defendants think $1000 is the highest amount allowable for pain and suffering here. Plaintiff on the other hand thinks a fair award for pain and suffering would be between $6000 and $10,000.

■ Each side cites a few decisions as supporting its view. A reading of them and many others on the subject affords persuasive proof of the wisdom of the familiar statement in our opinions that a comparison of verdicts is of little value in determining whether an award in a particular case is excessive. Each case must be evaluated according to the evidence produced in it. Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 459; Hurtig v. Bjork, supra, 258 Iowa 155, 162–163, 138 N.W.2d 62, 67 and citations.

"The amount of damages that may properly be awarded in any particular case depends upon the facts and circumstances of that case; hence, the verdict and judgment in another case of similar character is not a controlling criterion, but is at best an imperfect analogy." 22 Am.Jur.2d, Damages, section 368, page 476.

■ We think an award of $6000 to $10,000 for pain and suffering of decedent during the short time he survived the accident is much more than a fair consideration of the evidence supports. As stated, decedent's physician (who had examined him only ten days previously) witnessed the accident, came to his immediate aid and administered a "hypo" for relief of pain. Another "hypo" was given at the hospital when the doctor thought the first was wearing off. Defendant complained of numbness in his legs as well as severe pain from the injury. Although the "hypos" left decedent with a lot of pain, they —together with the constant attention of the doctor at the hospital—must have helped materially.

The doctor and hospital bills were comparatively nominal—$151.70 for both. Interest on the cost of the funeral and burial, disregarding the fact Social Security paid $200 to $250 of it, for five years would be $275. If decedent were to outlive the average expectancy of a person 83, $55 for each added year should be added to the $275 in computing this item of damage. Aside from these small sums and a fair allowance for pain and suffering, the rest of the verdict must represent the then present worth or value of the estate decedent would reasonably be expected to save and accumulate from his own efforts between the time of his death and the end of his natural life.

The evidence discloses no reasonable probability decedent would have added any considerable amount to his estate from his own efforts if this unfortunate accident had not taken his life. There is no fair basis to conclude decedent would have

earned more from his efforts in the next five years, had he lived, than in the last five years he did live. As stated, he reported no income from such source during those years and gave his occupation as retired. His only income was from rentals. Of course decedent would have been 88 had he lived another five years, while he was just 78 five years before he died. The reasonable deduction is his earning power would decline, rather than increase, with advancing years.

Plaintiff's counsel tells us the jury could have found decedent could have lived on his $100 a month Social Security together with free rental in his apartment in the remodeled fire station. Any assumption that it costs the owner nothing to live in his own property is erroneous. Taxes on this building increased from $335.36 in 1963 to $490.86 in 1965. In 1964 gas and electricity for the building cost a total of $1000. Gross income from it that year was just $1100, with a net loss for the year, including depreciation of $161.38, of $1247.

We are also told the jury could have found decedent's in-pocket income from the fire station building rentals could have produced $100 per month and he could have saved and accumulated $1000 a year for another ten years. Savings and accumulations from such source would not be from decedent's own efforts. But in any event the statement is scarcely within the realm of possibility. The largest net income from the building for any of the last five years decedent lived was $528.17 in 1962. If the depreciation of $161.38 claimed for that year were added to the first figure, the net profit for the year would total only $689.55. In the following year the net profit was just $132.97, with the same amount deducted for depreciation.

█ Of course the award in any case of present worth of accumulations reasonably to be expected from a decedent, had he

lived, is necessarily somewhat of an approximation. Railsback v. Buesch, 253 Iowa 1064, 1071, 114 N.W.2d 916, 920 and citations. And, as stated, damages for pain and suffering cannot be measured by any exact or mathematical formula. Nevertheless, upon the whole case we conclude the verdict of $15,000 is clearly above what the record justifies, and must be held excessive.

Unless a remittitur is filed within 30 days from the filing of this opinion of all the verdict in excess of $10,000 with interest from the date of the verdict and costs a new trial will be granted. If such remittitur is so filed, judgment shall be entered on the reduced amount.

IV. As may be inferred from what is just said, we find no reversible error in either of the other two assigned errors.

The claim of improper jury argument by plaintiff's counsel is that he resorted to the so-called "Golden Rule" argument, in violation of this pronouncement in Russell v. Chicago, R.I. & P.R. Co., 249 Iowa 664, 672, 86 N.W.2d 843, 848, 70 A.L.R.2d 927, 934:

"Direct appeals to jurors to place themselves in the situation of one of the parties, to allow such damages as they would wish if in the same position, or to consider what they would be willing to accept in compensation for similar injuries are condemned by the courts." (Citations)

During closing argument to the jury here plaintiff's counsel made this statement in substance: "It's been suggested that my suggestion of $10,000 or $20,000 was ridiculous or something to that effect, but let me ask you this question: Would counsel for the defendant or his client or I or you —"

At this point defendants' counsel interrupted opposing counsel and in the absence of the jury objected that what was said was a gross violation of the rules, highly

prejudicial and inflammatory. Defendants' counsel then moved for a mistrial which the court denied. Counsel then asked that *opposing counsel* be admonished that use of the "Golden Rule" argument was misconduct and improper. Plaintiff's counsel denied he had said anything improper yet; the court remarked he appeared to be moving toward the "Golden Rule" argument; plaintiff's counsel asked and was granted permission to finish his argument; no further objection was made to the argument until the motion for new trial was filed after the verdict was returned. Nor does the record show what plaintiff's counsel said in finishing his argument. Defendants' counsel did not ask that *the jury* be admonished to disregard as improper anything said in the closing argument for plaintiff.

■ We have held many times the trial court has considerable discretion in determining whether alleged misconduct of counsel, if there was such, was prejudicial. We will not interfere with its determination of such a question unless it is reasonably clear the discretion has been abused. Castner v. Wright, 256 Iowa 638, 652, 127 N.W.2d 583, 591, 128 N.W.2d 885, and citations; Mead v. Scott, 256 Iowa 1285, 1290, 130 N.W.2d 641, 644 and citations.

We find insufficient ground for holding the trial court abused its discretion here. The only ruling made was to deny a mistrial. The fact defendants' experienced counsel did not see fit to have a record made of the rest of his opponent's argument nor object to anything then said seems to indicate there was no further ground for objection. So far as shown, the trial court heard the entire argument and evidently felt there was no clear resort to the so-called "Golden Rule" argument.

V. The remaining assigned error is that the chief of police was allowed to give testimony concerning skid marks at the scene which, it is said, was based on hearsay and was contrary to testimony of Officer Bruscher who, with a police car, made one of the two sets of skid marks there. It is sufficient answer to this assignment that the record references supporting it reveal no error.

■ Further, the testimony referred to cannot be deemed prejudicial to defendants. It bore on the issue of the driver's negligence. Defendants offered no testimony except a few lines from the driver's deposition to the effect his speed when he first saw decedent two car lengths away or a little more was about 25 miles per hour. (That was the speed limit at the place of the accident.) Decedent's physician was of the opinion the driver's speed was about 40 miles per hour.

There can be little doubt the driver's negligence caused the accident. Two of the four charges of negligence were failure to maintain a proper lookout and failure to yield the right-of-way to a pedestrian in a crosswalk. The driver testified without objection in his deposition offered by plaintiff that he pleaded guilty to this second charge.

If, as defendants' counsel objected, the chief of police gave testimony contrary to that of the other officer, it would benefit defendants rather than be prejudicial to them.

As stated at the end of Division III hereof, if a remittitur is filed within 30 days from the filing of this opinion of all the verdict in excess of $10,000, judgment shall be entered on the reduced amount, with interest from the date of the verdict and costs. If such remittitur is not so filed, a new trial will be granted.

Affirmed on condition.

All Justices concur, except BECKER, J., who dissents.

BECKER, Justice.

I dissent. What was said in dissent in Hurtig v. Bjork, 258 Iowa 155, 138 N.W. 2d 62 applies here. But this case constitutes complete abandonment of all criteria for ordering remittiturs except the judges' own subjective opinion of the amount that may be justified by the evidence. Our former adherence to the proposition that judges will not invade the province of the jury is clearly abandoned.

To quote the note at 48 Iowa Law Review 649, 655, 656, "The court in applying the substantial evidence standard is usually careful to recognize that the damage question is a question of fact peculiarly for the jury to decide and that great care must be exercised so as not to invade the province of the jury. Moreover, it is emphasized that judges must be cautious not to substitute their judgment for that of the jury, and that they must recognize that no two cases will be exactly the same with no two juries returning the same verdict. A close examination of Iowa decisions reveals that the court articulates but does not follow these controls. In most cases where the damages are allegedly excessive, the court essentially reviews the facts and evidence as shown in the record, decides what amount such record will justify, and enters its judgment accordingly. It is striking that a court which frequently has stated that unliquidated damages and damages for pain and suffering are not subject to mathematical computation or cannot be compensated by a money judgment can review a 'cold record' where evidence is often conflicting and determine the proper dollar amount of recovery which the evidence will support." At page 664 the author said: "The Iowa Constitution provides for protection of the right to jury trial, and the supreme court has been careful to recognize that the province of the jury must not be invaded. Nonetheless, this province seems to have been freely invaded when the court subsequently makes the determination of damages—which is often the crux of the jury's task. The Iowa court has indicated that it remits to the highest verdict which the evidence will sustain."

We are no longer careful to note that we do not invade the province of the jury. This, at least, as the merit of integrity; for we do invade the province of the jury in this case. In reality we become the jury. What this court is really doing here is reversing a long line of Iowa cases. This is easily demonstrated by quotation from Primus v. Bellevue Apartments, 241 Iowa 1055, 1065, 1066, 44 N.W.2d 347, 353, 25 A.L.R.2d 565: "We have said precedents are of little value because of the varying circumstances and the imponderables and that each case must turn on its own facts. Dunham v. Des Moines Ry. Co., 240 Iowa 421, 430, 35 N.W.2d 578, 583, 584, points out that in reducing an award or granting a new trial for excessive verdict the court is substituting its judgment on a fact question for that of the jury, ' * * * only where the award appears to be unconscionable or clearly not warranted by the record, should the judgment of the jury, in such matters be disturbed.'

"DeToskey v. Ruan Transport Corporation, 241 Iowa 45, 48, 40 N.W.2d 4, 6, 17 A.L.R.2d 826, enunciates the same rule, cites various supporting decisions of this court and quotes from Collins v. City of Council Bluffs, 32 Iowa 324, 331, 332, 7 Am.Rep. 200, 205, a statement that the law imposes on the jury the duty to assess damages in consideration of its fitness to discharge it:

" 'Neither in fact nor in law are courts better prepared to discharge it; they are not under the law charged with that delicate duty, and should not indirectly assume its exercise when, according to their judgments, verdicts do not accord with their views in the exact amount of damages allowed. * * * In no case ought a verdict be disturbed unless it is so flagrantly ex-

cessive as to raise a presumption that it was the result of passion, prejudice or undue influence, and not the result of an honest exercise of the judgment and the lawful discretion of the jury.'" How can what is said in this case be squared with those holdings? Shouldn't all such cases, and they are myriad, be overruled? We now state we need no such standards.

By evolution—and by rationalization—we clearly contravene Article I, section 9 of our own constitution by denying a jury trial. In a case like this it is incorrect to say the plaintiff may have a new trial is he so desires. There is no possibility of new evidence that would make a new trial and new appeal more beneficial. It would be cheaper, and better to simply have these matters submitted to us on the record, *sans* decision by a trier of the fact.

If the jury is there to help represent the combined judgment of the community; as a touchstone with reality, we should not use it simply to reduce its judgment. If this jury had brought in a $5000 verdict and plaintiff appealed for an additur, would we have raised it to $10,000? In DeMoss v. Walker, 242 Iowa 911, 48 N. W.2d 811, we refused to order an additur where the jury brought back a verdict of $100 in a wrongful death action by the estate of a 77 year old woman.

One other point, if this record does not sustain a $15,000 award what happens to defendant's right to a jury trial with this solution? He has had no jury fix damages at $10,000. Yet we say he must pay that amount if plaintiff elects to take it. See 48 Iowa Law Review, 649, 664.

In this day of changing values it does not seem incongruous for the jury to fix a $15,000 value for the wrongful death of a human being regardless of his or her age. Such a view is even more persuasive where acute pain is involved. Assessment *by us* of the alleviating effect of hypodermic injections of demerol seems clearly unwise.

I would affirm.